Ivan JONES, et al., Appellants,

v.

**BEECH AIRCRAFT CORPORATION,**
Appellee.

No. 04–98–00983–CV.

Court of Appeals of Texas,
San Antonio.

May 26, 1999.

Robert Scott, Martha Sue Dodson, Tinsman & Houser, Inc., San Antonio, James P. Collins, O'Reilly, Collins & Danko, Menlo Park, CA, Gary L. Simms, Law Office of Gary L. Simms, Ashland, OR, for appellants.

Richard H. Caldwell, Mayor, Day, Caldwell & Keeton, L.L.P., Houston, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, KAREN ANGELINI, Justice.

Opinion by: TOM RICKHOFF, Justice.

This accelerated appeal was generated by the trial court's order sustaining a special appearance by Beech Aircraft Corporation, a Kansas aircraft manufacturer. The underlying wrongful death action, alleging product defect and negligence claims, resulted from an airplane crash in New Zealand that killed six people. Their survivors are all foreign nationals. In resolving the jurisdictional issue before us, we confront competing extremes of allowed forum selection and presentations that are not straightforward.[1]

### STANDARD OF REVIEW

On interlocutory appeal, we review the granting of a special appearance for an abuse of discretion. *See Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 689 (Tex.App.—San Antonio,

---

1. Beech refused to provide sales figures to Texas residents. The plaintiffs candidly admitted during oral argument that no tort actions are allowed in New Zealand and that the other defendants may not be subject to personal jurisdiction in Kansas. But we note that Texas's appeal as a friendly forum for plaintiffs may only exist now in residual reputation. *See* Phil Hardberger, *Juries Under Siege,* 30 ST. MARY'S L.J. 1 (1998).

1998, no pet.). Under an abuse of discretion standard, we may not disturb a trial court's resolution of factual issues unless the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). With regard to legal issues, we are much less deferential. *Id.* at 840. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

█ Because the record lacks findings of fact and conclusions of law, all questions of fact are presumed to support the judgment. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); *Magnolia Gas Co.*, 994 S.W.2d at 689. Because our record contains a reporter's record from the hearing before the trial court, however, the presumed findings are inconclusive. *Zac Smith & Co.*, 734 S.W.2d at 666; *Magnolia Gas Co.*, 994 S.W.2d at 689.

### PERSONAL JURISDICTION PRINCIPLES

█ A Texas Court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction comports with due process. *See Guardian Royal Exch. Assurance., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The broad language of the long-arm statute permits an expansive reach, limited only by federal constitutional requirements of due process. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). The entire test thus collapses into the single question of whether it is consistent with federal constitutional requirements of due process for Texas to assert personal jurisdiction over the defendant. *See Disney Enters., Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.). Under the federal constitutional test of due process, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

█ The minimum contacts analysis has been refined to two types of jurisdiction—specific and general. Specific jurisdiction exists when the cause of action arises out of or relates to the nonresident defendant's contacts with Texas. *See Guardian*, 815 S.W.2d at 230. General jurisdiction exists when the defendant's contacts with Texas are continuous and systematic, even if the cause of action does not arise from or relate to activities conducted within Texas. *See id.* The general jurisdiction analysis is more demanding than the specific jurisdiction analysis and requires a showing of substantial activity in the forum state. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). The minimum contacts requirement is satisfied if either *general* or *specific* jurisdiction exists, and a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *See id.* at 595–96.

### GENERAL JURISDICTION ANALYSIS

Beech relies on the following facts to establish that it is not amenable to process in Texas.

- It is a Kansas corporation with its principal place of business in Wichita, Kansas

- It is not qualified, nor has it ever been qualified, to do business in Texas

- It does not maintain, nor has it ever maintained, a registered agent for service of process in Texas

- It does not have, nor has it ever had, an office, warehouse, business location, mailing address, phone number, or answering service in Texas

- It neither holds nor owns any licenses, charter, or permits in Texas

- It has no bank accounts in Texas, owns no property in Texas, and pays no taxes in Texas

- It does not hold corporate meetings or maintain corporate records in Texas

Beech contends its contacts are limited to the following.

- The maintenance of a "home page" on Raytheon Company's web site
- The maintenance of a telephone listing in Houston
- The presence of four designated sales representatives in Texas employed by a wholly-owned subsidiary, Raytheon Aircraft Holdings, Inc.
- The conducting of business through wholly-owned subsidiaries
- The selling of aircraft to Texas residents in Kansas

Beech also relies on *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987), a case in which the Fifth Circuit determined that Beech was not subject to the general jurisdiction of Texas courts. In our case and in *Bearry,* the accident and the manufacture and sale of the aircraft occurred outside of Texas, and the plaintiffs do not live in Texas. The appellants assert, however, that this case is distinguishable from *Bearry* because of the relationship between Beech and its subsidiaries that has evolved since *Bearry* was decided and because Beech now uses an Internet web site.

### Beech's Corporate Identity

■■■ Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state simply because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 418 (Tex.App.— Houston [14th Dist.] 1997, no writ); *3-D Elec. Co., Inc. v. Barnett Const. Co.*, 706 S.W.2d 135, 139 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, in some circumstances, a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in

a jurisdiction through the local activities of its subsidiaries. *Hargrave*, 710 F.2d at 1159; *Conner*, 944 S.W.2d at 418; *3-D Elec. Co., Inc.*, 706 S.W.2d at 139. The rationale for such an exercise of jurisdiction is that the parent corporation exerts such dominance and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction. *Hargrave*, 710 F.2d at 1159; *Conner*, 944 S.W.2d at 418.

■■■ The appellants had the burden of proving the existence of the type of close relationship that would enable the court to disregard the separate corporate structures. *See Hargrave*, 710 F.2d at 1160–61; *Conner*, 944 S.W.2d at 418. All relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist. *Conner*, 944 S.W.2d at 419.

Beech Aircraft Corporation, founded in 1932, became a wholly owned subsidiary of Raytheon Company in 1980, but retained the Beech name. Raytheon Company formed Raytheon Aircraft (R.A.C.) in September 1994, combining Beech Aircraft Corporation and Raytheon corporate Jets, Inc. R.A.C. remains a wholly owned subsidiary of Raytheon Company. Beech Aircraft Corporation is the former name of R.A.C. The name "Beech" remains a registered trademark of R.A.C. Raytheon Aircraft Services (R.A.S.) and Raytheon Aircraft Holdings, Inc. (R.A.H.) are wholly-owned subsidiaries of Beech. The appellants established that Beech, R.A.S., and R.A.H. have common officers and directors. *See Conner*, 944 S.W.2d at 419.

R.A.S. is also a defendant and has not contested jurisdiction. It operates fourteen business aviation service centers across the U.S., with three in Texas, including one in Bexar County—the county in which this suit was filed. In response to interrogatories, Beech's corporate representative, Wayne Wallace, did not reveal

the level of sales to Texas residents and objected to interrogatory questions about sales in Texas. But the answers to interrogatories do reveal that R.A.S. provides technical support at the service centers for Texas operators of Beech aircraft. R.A.S. sells only Raytheon products. The Beech logo appears on R.A.S. signs at San Antonio International Airport, Dallas Love Field, and Houston Hobby Airport. Signs at these R.A.S. offices direct customers to an aircraft sales office. In addition, vehicles at the Houston Hobby location have a "Beechcraft" logo. The address of R.A.S.'s Houston Hobby location is also listed as Beech's address in Beech's Texas telephone listing. When an investigator approached an employee at this address, he was informed that sales are handled out of Dallas and was given a pamphlet with a contact telephone number.

R.A.H. employs four sales representatives in Texas. These employees solicit sales on behalf of Beech. Wallace testified in his deposition that the sales representatives report to supervisors who are employed by Beech. Beech provides sales support, including information and training, for the sales representatives. Although R.A.H. previously was a holding company for a number of fixed-based operations in the early 1990s, the only business or asset that Wallace could name in which R.A.H. engaged or held at the time of his deposition was the employment of the sales representatives who solicit sales on behalf of Beech. It is therefore apparent that R.A.H. now has little purpose other than to insulate Beech from being subjected to jurisdiction in Texas.

This evidence contrasts with the evidence in *Bearry*, in which the court noted that Beech distributed its aircraft through independent dealers, had no employees who were permanently assigned to work in Texas, had no agents in Texas, had no control over any Texas dealers, and had no telephone listing in Texas. *See Bearry*, 818 F.2d at 372–76. The evidence demonstrates not only common ownership and commonality among the officers and directors of the various companies, but also

that Beech exercised control over the daily operations of R.A.S. and R.A.H. *See Conner*, 944 S.W.2d at 419. Because signs, vehicles, and literature at R.A.S.'s Texas facilities refer to Beech and aircraft sales, those who came into contact with R.A.S. were not apprised of the separate identity of the entities. *See id.* The relationship between Beech and R.A.S. and R.A.H. is so close that we conclude Beech does business in Texas through the local activities of these subsidiaries.

### Beech's Web Site

 The Internet is a global communications network that makes it possible to conduct business throughout the world entirely from a desktop. *Thompson v. Handa–Lopez, Inc.*, 998 F.Supp. 738, 742 (W.D.Tex.1998); *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 786 (E.D.Tex. 1998). In Texas, Internet use is categorized in three areas on a sliding scale for jurisdictional purposes. *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.*, 1999 WL 76794, at *3 (N.D.Tex. Feb.3, 1999); *Thompson*, 998 F.Supp. at 742–43. At one end of the scale are situations in which a defendant clearly does business over the Internet by entering into contracts with residents of other states that involve the knowing and repeated transmission of computer files over the Internet. *Origin Instruments Corp.*, 1999 WL 76794, at *3; *Thompson*, 998 F.Supp. at 742–43; *Mieczkowski*, 997 F.Supp. at 786. At the other end of the scale are passive web site situations. *Origin Instruments Corp.*, 1999 WL 76794, at *3; *Thompson*, 998 F.Supp. at 743; *Mieczkowski*, 997 F.Supp. at 786. A passive web site, which solely makes information available to interested parties, is not grounds for personal jurisdiction. *Origin Instruments Corp.*, 1999 WL 76794, at *3; *Thompson*, 998 F.Supp. at 743; *Mieczkowski*, 997 F.Supp. at 786. For example, the posting, without more, of an ordinary website homepage is insufficient to expose a defendant to personal jurisdiction. *Bush v. Tidewater Marine Alaska, Inc.*, 1998

WL 560048 (E.D.Tex. Apr.16, 1998). In the middle are "interactive" web sites, which permit a user to exchange information with the host computer (the person or company maintaining the web site). *Origin Instruments Corp.*, 1999 WL 76794, at \*3; *Thompson*, 998 F.Supp. at 743; *Mieczkowski*, 997 F.Supp. at 786. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity between the parties on the web site. *Origin Instruments Corp.*, 1999 WL 76794, at \*3; *Thompson*, 998 F.Supp. at 743; *Mieczkowski*, 997 F.Supp. at 786.

Raytheon Company's web site, including the Beech homepage, provides employment information and information about how to acquire Beech aircraft. The site is also somewhat interactive. It allows users to input information that the host computer uses to provide the name and phone number of the nearest sales representative, including the Texas sales representatives. The site also includes an e-mail icon. Although the web site alone would not be sufficient to establish jurisdiction in Texas, we believe it is a factor to consider along with the other contacts that exist in this case.

### Other Contacts

In addition to the contacts of Beech's subsidiaries with Texas, Beech's web site, and Beech's Texas telephone listing, Beech has contacts with Texas related to this suit. The 1965 aircraft at issue in this case was sold to a Texas resident in December of 1969 and was operated by Texas residents in Texas and Oklahoma for nearly fifteen years. In *Bearry*, the evidence established that the plaintiffs' plane had never been owned by a Texas resident. *See* 818 F.2d at 373. The aircraft was modified in Friendswood, Texas, in 1976. The modification included the installation of engines and a Beech-made part. The appellants allege that this modification caused the plane to be defective. In *Bearry*, the evidence established that the plaintiffs' plane had never been repaired or serviced in Texas. *See id.* Finally, Beech was a party to an investigation of a similar air crash in Madisonville, Texas in 1981. The appellants allege that through this investigation, Beech acquired information that should have put it on notice that the 1976 modification would cause a defect. Again, this evidence contrasts with the evidence in *Bearry*, in which "no one argue[d] that [the] lawsuit relate[d] in any way to Beech's contacts with Texas." *Id.* at 373.

We conclude that these contacts, combined with Beech's ability to solicit sales in Texas through its subsidiaries and through the Internet, are sufficient to subject Beech to general jurisdiction in Texas. While the evidence in this case, as in *Bearry*, demonstrates that Beech carefully structures its sales so that the contracts arise in Kansas, this case is distinguishable from *Bearry* for the reasons explained above. In *Bearry*, the evidence demonstrated that Beech had "calculatedly avoided" Texas. *Id.* at 376. In this case, the evidence does not show that Beech has avoided Texas, but rather that it has calculatedly attempted to cover its tracks in Texas. Of course, it is not necessary to cover your tracks in a place where you have not been.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

Under the second prong of the due process test, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *See Schlobohm*, 784 S.W.2d at 358. We consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian*, 815 S.W.2d at 228. Because the minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair

play analysis. *Schlobohm*, 784 S.W.2d at 357–58. We must consider this analysis, however, because the case law makes it clear that this analysis is separate and distinct from the minimum contacts issue. *Id.* at 358.

In this case, personal jurisdiction comports with the principles of substantial justice and fair play. Because Beech and R.A.S. have common officers and directors and personal jurisdiction exists as to R.A.S., Beech's burden in defending the lawsuit in Texas is lessened. Texas has a considerable interest in adjudicating this dispute. Because Beech's contacts in soliciting sales within Texas are substantial, Texas's interest in ensuring that Texas residents are not sold defective planes is also substantial. Texas's interest in resolving the defect issue is increased by the fact that another crash previously occurred in Texas as a result of a similar alleged defect. The appellants' interest in obtaining the most convenient and efficient relief and the judicial system's interest in obtaining the most efficient resolution of the controversy also militate in favor of jurisdiction. In addition to Beech and R.A.S., the appellants have also joined the manufacturers of certain component parts of the aircraft in this suit. Texas undisputably has jurisdiction over these manufacturers and R.A.S. Therefore, the most convenient and efficient way to resolve the entire controversy is to allow the appellants to proceed against Beech in the same lawsuit, here in Texas.

### CONCLUSION

Our review of the record of the special appearance hearing shows that the trial court made a diligent and probing effort to resolve the issues raised by Beech's special appearance. But after reviewing the largely uncontroverted evidence submitted on the special appearance, we conclude that Beech failed to establish it is not subject to the general jurisdiction of Texas courts. We therefore reverse the trial court's order sustaining the special appear-

ance and remand the cause for further proceedings.