Ivan JONES, et al., Appellants,

v.

**RAYTHEON AIRCRAFT SERVICES, INC., a subsidiary of Raytheon, and Beech Aircraft Corporation, Appellees.**

No. 04–02–00279–CV.

Court of Appeals of Texas, San Antonio.

Aug. 13, 2003.

Rehearing Overruled Sept. 22, 2003.

Gary L. Simms, James P. Collins, Terry O'Reilly, O'Reilly, Collins & Danko, San Mateo, M. Sue Dodson, Robert Scott, Tinsman, Houser & Sciano, Inc., San Antonio, Russell J. Weintraub, Austin, for appellants.

Richard H. Caldwell, David V. Harbach, II, Cameron Pope, Greg Waller, Andrews & Kurth L.L.P., Houston, for appellees.

Sitting SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Ivan Jones and his fellow plaintiffs, all relatives of the victims of a New Zealand plane crash, appeal the trial court's dismissal of their wrongful death claims based on the doctrine of forum non conveniens. Because New Zealand is a forum in which, in the interest of justice, this action would more properly be heard, the trial court did not abuse its discretion in declining to exercise jurisdiction. The trial court's judgment of dismissal is affirmed.

### BACKGROUND

On March 29, 1995, a Beech Queen Air/Excalibur Conversion aircraft crashed in New Zealand, killing the pilot (William Gaisford), copilot (Tane Moana Wilkins), and four passengers (Hans Wagner, Bliss Wagner, Esther Maria Jones, and Denis McCarthy). The plane was owned by Kiwi West Aviation Ltd. ("Kiwi West"). It departed Hamilton, New Zealand, for a flight to New Plymouth, New Zealand. Minutes after takeoff, the crew reported it had lost an engine and was returning to Hamilton; on the way back the other engine failed, and the plane crashed in a pasture near Ngahinapouri, New Zealand.

The New Zealand Transport Accident Investigation Commission determined that the plane crashed as a result of double engine failure. Specifically, the Commission concluded that the engines failed because of fuel starvation—*i.e.*, the engines

ran out of fuel, even though the outboard fuel tanks contained enough fuel for the entire flight. That fuel may never have reached the engines because the selectors were set for the inboard fuel tanks, which were nearly empty. The inboard fuel tanks may have been selected because Kiwi West applied the same checklist to two outwardly similar aircraft with significantly different fuel systems. Also, the investigators criticized Beech's flight manual for using allegedly ambiguous terminology to describe the two sets of fuel tanks.

The aircraft that was involved in the accident was assembled by Beech Aircraft Corp. ("Beech") in Kansas in 1965. In 1977, the aircraft underwent modifications—the Excalibur conversion—to substitute larger engines, modify the fuel system, and change other features. These modifications were performed by Excalibur Aviation Co. ("Excalibur") in Texas. In 1989, the plane was shipped to Australia. In 1994, the plane was again shipped, this time to New Zealand, where it was refurbished and put into service by Kiwi West. The plane was operated in New Zealand until the 1995 crash.

Following the crash, a group of plaintiffs brought suit in the 57th Judicial District Court, Bexar County, Texas. The group of plaintiffs consists of:

- Ivan Jones and his children Nicole Wein, Megan Jones, and Carla Jones. They are all residents of New Zealand. Ivan Jones is the surviving spouse of passenger Esther Maria Jones.

- Beverly McCarthy and her children Tracy Gmuer, Justin McCarthy, Clair West, Paul McCarthy, Mary McCarthy, and Kevin McCarthy. Gmuer is a resident of Switzerland and Mary McCarthy is a resident of England; the others are all residents of New Zealand. Beverly McCarthy is the surviving spouse of passenger Denis McCarthy.

- Frieda Muhlberger. She resides in New Zealand. Muhlberger is the mother of passenger Hans Wagner and the grandmother of passenger Bliss Wagner.

- Suzanne Gaisford and her children William Henry John Gaisford, Caroline Elisabeth Gaisford, and Georgina Louise Gaisford. They all reside in New Zealand. Suzanne Gaisford is the surviving spouse of pilot William Gaisford.

- Jane Wilkins and her daughter, Mary Frances Wilkins. They both reside in New Zealand. Jane Wilkins is the surviving spouse of copilot Tane Moana Wilkins.

For simplicity, the plaintiffs will be referred to collectively as "Jones."

Jones sued a group of defendants that were involved in the manufacture and modification of the aircraft, including Excalibur, Raytheon Aircraft Services, Inc. ("Raytheon"), Beech, and Swearingen Aircraft, Inc. ("Swearingen"). In his petition, Jones claimed that the aircraft, as manufactured and modified, was a defective product. He also asserted other theories of liability including negligence, breach of the duty to warn of defects, and breach of warranties. Jones sought recovery for wrongful death, pecuniary loss, loss of inheritance, medical and funeral expenses, mental anguish, and loss of companionship and society.

Beech filed a special appearance to challenge the trial court's exercise of personal jurisdiction over it in Texas. Beech also filed a conditional motion to dismiss for forum non conveniens. Meanwhile, Raytheon filed a motion to dismiss for forum non conveniens. Swearingen moved to join Beech and Raytheon's motion to dismiss for forum non conveniens. The trial court sustained Beech's special appear-

ance. Jones filed an interlocutory appeal, and this court reversed and remanded. *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 774 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.), *abrogated by BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 n. 1 (Tex.2002) (discussing proper standard of review for special appearances). This court noted that Beech's contacts with Texas—including its interactive web site and its aircraft sales as Raytheon Aircraft Holdings—and the presence in the suit of its subsidiary Raytheon Aircraft Services (which has a significant presence at Texas airports) made Beech subject to general jurisdiction in Texas. *See Jones*, 995 S.W.2d at 774.

After the case was remanded to the trial court, the parties conducted additional discovery. In response to Beech and Raytheon's requests for admission, Jones admitted that none of the plaintiffs are legal residents of the United States. Also, the parties produced affidavits from several New Zealand legal experts on its no-fault accident insurance system. Apparently, before 1972, New Zealand had a personal injury tort litigation system similar to that in the United States and other common law countries and a worker's compensation insurance system. In 1972, Parliament expanded the worker's compensation insurance system to include all accidental injuries and deaths sustained by any individual in New Zealand. The system is funded by contributions from employers. The Accident Compensation Commission handles all claims without any involvement by the alleged wrongdoer. Dependents of deceased victims receive weekly payments based on the deceased's earnings. As a corollary, victims may not bring lawsuits in New Zealand courts for injuries that are covered by the accident insurance system.

After the additional discovery was conducted, Swearingen filed a motion for summary judgment, arguing that it is unrelated to the now-defunct company, also named Swearingen, that was involved with the Excalibur conversion. The trial court heard Swearingen's motion for summary judgment and Beech and Raytheon's motion to dismiss for forum non conveniens. At the hearing, the trial court granted Swearingen's motion for summary judgment. Later, the trial court granted Beech and Raytheon's motion to dismiss for forum non conveniens. The trial court also granted Swearingen's motion to sever and Jones's motion to nonsuit Excalibur. Jones filed a notice of appeal raising the sole issue of the trial court's granting of Beech and Raytheon's motion to dismiss for forum non conveniens.

## STANDARD OF REVIEW

We review the trial court's dismissal for forum non conveniens under an abuse of discretion standard. *Feltham v. Bell Helicopter Textron, Inc.*, 41 S.W.3d 384, 387 (Tex.App.-Fort Worth 2001, no pet.). An abuse of discretion standard allows an appellate court to review questions of law de novo, while affording the greatest measure of deference available to the trial court's factual determinations. *In the Matter of K.T.*, 107 S.W.3d 65, 73 (Tex. App.-San Antonio 2003, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In other words, the test is whether the act was arbitrary or unreasonable. *Id.* at 242. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.*

### DISMISSAL BASED ON THE DOCTRINE OF FORUM NON CONVENIENS

 Jones appeals the trial court's dismissal of his claims against Beech and Raytheon based on the doctrine of forum non conveniens. The doctrine of forum non conveniens is an equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant. *Baker v. Bell Helicopter Textron, Inc.*, 985 S.W.2d 272, 274 (Tex.App.-Fort Worth 1999, pet. denied). A court can dismiss a case on the grounds of forum non conveniens even if jurisdiction is proper.[1] *Id.*

Since 1993, Texas law on forum non conveniens in personal injury and wrongful death cases has had a statutory basis.[2] The forum non conveniens statute applies a different standard to non-residents than to residents of the United States. Subsection (a), which applies to non-residents, states:

> With respect to a claimant who is not a legal resident of the United States, if a court of this state, on written motion of a party, finds that in the interest of justice an action to which this section applies would be more properly heard in a forum outside this state, the court may decline to exercise jurisdiction under the doctrine of forum non conveniens and may stay or dismiss the action in whole or in part on any conditions that may be just.[3]

Act of Mar. 4, 1993, 73d Leg., R.S., ch. 4, 1993 Tex. Gen. Laws 10, *amended by* Act of May 29, 1997, 75th Leg., R.S., ch. 424, 1997 Tex. Gen. Laws 1690. By contrast, to seek dismissal of a suit filed by a United States resident, the statute imposes a burden on the movant to prove that:

> (1) a forum outside this state is a more appropriate forum that:
>
> (A) offers a remedy for the causes of action brought by a party to which this section applies;
>
> (B) as a result of the submission of the parties or otherwise, can exercise jurisdiction over all parties and claims properly joined in the action by the claimant; and
>
> (C) would provide a place of trial that is fair, reasonable, and convenient to the parties;
>
> (2) maintenance of the action in the courts of this state would work a substantial injustice to the moving party and the balance of the private interests of all the parties and the public interest of the state predominates in favor of the action being brought in the other forum; and
>
> (3) the stay or dismissal would not, in reasonable probability, result in unrea-

1. As noted earlier, this court has already decided that Beech is subject to the general jurisdiction of Texas courts. *See Jones*, 995 S.W.2d at 774. However, that finding of personal jurisdiction does not prevent this court from concluding that dismissal of the case on the doctrine of forum non conveniens was proper. *See Baker*, 985 S.W.2d at 274.

2. In *Dow Chemical Co. v. Castro Alfaro*, 786 S.W.2d 674 (Tex.1990), the Texas Supreme Court concluded that the doctrine of forum non conveniens did not apply to wrongful death cases. *Id.* at 679. The Legislature overturned this result by passing a forum non conveniens statute that is applicable to per-

sonal injury and wrongful death cases. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(i) (Vernon Supp.2003) (specifying that section 71.051 applies to personal injury and wrongful death cases); *Direct Color Servs., Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 563 n. 1 (Tex.App.-Tyler 1996, writ denied).

3. In 1997, the statute was amended effective May 29, 1997. Because Jones filed suit on March 19, 1997, the pre-amendment statute applies. The changes to subsection (a) were not significant: "claimant" was changed to "plaintiff" and "action" was changed to "claim or action." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(a) (Vernon Supp.2003).

sonable duplication or proliferation of litigation.

Act of Mar. 4, 1993, 73d Leg., R.S., ch. 4, 1993 Tex. Gen. Laws 10 (amended 1997).

Subsection (a), which is applicable to non-residents, lacks the specifically enumerated factors of subsection (b) that place an additional burden on movants seeking to dismiss suits filed by United States residents. *See Baker*, 985 S.W.2d at 276. Thus, the plain language of the statute is such that subsection (a) does not require a consideration of the same factors as subsection (b). Subsection (b) specifically states what a more appropriate forum is, whereas subsection (a), by comparison, only requires a consideration of the interest of justice without consideration of the specific requirements of subsection (b). The Legislature clearly intended that two distinct standards should apply to motions to dismiss suits filed by residents and suits filed by non-residents.[4] *Id.* at 275; Carl Christopher Scherz, Comment, *Section 71.051 of the Texas Civil Practices and Remedies Code—The Texas Legislature's Answer to Alfaro: Forum Non Conveniens in Personal Injury and Wrongful Death Litigation*, 46 BAYLOR L.REV. 99, 110 (1994). As stated at the committee hearing,

> What we have done in this particular bill is set up two different standards. One ... for residents of foreign countries, and another for residents of the United States. I think the provisions concerning the residents of the United States are fairly clear, they're detailed, they give the trial court a very strong ... suggestion that you don't transfer a case unless ... the case truly belongs somewhere else.... But what the con-

troversy is over really is the foreign plaintiffs.....

> In order to transfer a case ... back to a foreign country when a foreign resident has filed suit in Texas, the defendant must prove by a preponderance of the evidence and the court must specifically find that [it is in the interest of] justice and that term is left undefined in the statute. Justice requires the action to be transferred and that the case would be more properly heard in a forum outside Texas.

> This gives the trial court a great deal [of] discretion to review each case on its own merits. And if it finds that a case truly doesn't belong in Texas and has no relationship to Texas then properly it may transfer the case to the other jurisdiction.

*Section 71.051 Forum Non Conveniens: Hearing on Tex. S.B. 2 Before the Senate Econ. Dev. Comm.*, 73d Leg., R.S. 8 (Jan. 26, 1993) (statement of Fred Baron, Texas Trial Lawyers Association) (transcript available from Senate Staff Services Office).

▓ The record shows that the remaining litigants and witnesses have little or no relationship with Texas. Based on these facts, the trial court was entitled to conclude that in the interest of justice the case would more properly be heard in New Zealand. Jones, however, argues that, because New Zealand does not have a traditional court system where claimants can sue defendants, it is not a "forum" as contemplated by the forum non conveniens statute. In support of this argument, Jones has provided us with legislative history and briefing. Beech and Raytheon

---

4. We disagree with the assessment of another Court of Appeals that the enumerated factors for dismissal of suits by United States residents are instructive in evaluating the dis-

missal of cases filed by non-residents. *See Feltham*, 41 S.W.3d at 387 (citing *Baker*, 985 S.W.2d at 277). That reasoning does not give effect to the plain differences in the statutes.

have likewise provided legislative history and briefing in support of their position.

First, Jones refers us to the Bill Analysis, which notes the language of the statute stating that in order to dismiss a suit where a claimant is not a United States resident, the court must find that in the interest of justice, "the suit would be more properly heard out-of-state." HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 2, 73d Leg., R.S. 2 (1993). This language does nothing more than to essentially track subsection (a) of the statute. Secondly, Jones quotes from testimony of a proponent of the legislation who commented that the legislation empowers a judge to ensure a suit brought by a foreign claimant "is tried fairly and in an appropriate forum." *Section 71.051 Forum Non Conveniens: Hearing on Tex. S.B. 2 Before the Senate Econ. Dev. Comm.,* 73d Leg., R.S. 6 (Jan. 26, 1993) (statement of Louis Austin, Jobs for Texas) (transcript available from Senate Staff Services Office). This quoted language, however, says nothing definitive about what constitutes an appropriate forum. Thirdly, Jones cites to testimony of Fred Baron, one of the drafters, who commented that where a case is more properly "heard in a forum outside Texas" the court "may transfer that case to the other jurisdiction." *Id.* at 8. Again, this gives no indication of what constitutes a forum for purposes of subsection (a) of the forum non conveniens statute.

Beech and Raytheon point to statements made by Representative Robert Junell during the House floor debate. Junell, one of the bill's authors, stated,

Well, the first part, the bill is divided into two portions and if you'd look at the first half which is Section A of the bill, which is about the first paragraph on Page 1. That deals with, with people who are not legal residents of the United States. In that case, the court has discretion and the things that they hear is that they may, they can find out whether it's in the interest of justice, whether or not that country has a remedy, whether or not that country has a court system. Ah, there may be places in the world that don't even have a court system, ah that is available. So the judge gets to hear that evidence.

Debate on Tex. S.B. 2 on the Floor of the House of Representatives, 73d Leg., R.S. 2 (Feb. 22–23, 1993) (transcript available from Senate Staff Services Office). Further, Beech and Raytheon point out that the legislature knew that the forum non conveniens doctrine could limit or end a claimant's recovery, but nevertheless chose to pass the bill as it was written. In support, Beech and Raytheon cite to the Bill Analysis which recognized that opponents of the bill were arguing that

[t]his bill would force Texas courts to send cases involving severe personal injury or death to foreign jurisdictions that often harshly limit monetary recovery. For instance, in Singapore the widow and four children of the shipyard worker could receive only $17,000 in compensation through a government agency. The maximum recovery for Domingo Castro Alfaro and the other Costa Rican workers poisoned by a pesticide banned in the United States, but shipped overseas by Dow Chemical and Shell Oil, would be only $1,000 in Costa Rica. In reality, because of the limitations of most foreign legal systems, sending a case out of Texas courts effectively ends the plaintiff's chances of recovery for their injuries. One study showed that less than 4 percent of cases dismissed under the doctrine of *forum non conveniens* ever reach trial in a foreign court. SB 2 would create a two-tier justice system that discriminates

against poor foreigners injured by Texas companies. HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 2, 73d Leg., R.S. 5 (1993). Beech and Raytheon also point out that an amendment to subsection (a), which would have required that the alternative forum have "a system of civil justice that is substantially equivalent to our system of justice" before the trial court could grant a motion to dismiss for forum non conveniens, was tabled and never passed. H.J. OF TEX., 73d Leg., R.S. 454 (1993) (amendment offered by Representative Rodriguez). Further, during the debate on the amendment, Representative Junell stated:

> Say that we have a resident of China who wants to bring a lawsuit in the State of Texas, ah do we go in and say look we're gonna [hear] this case here in Texas even though the Chinese have developed a system of justice which is unique to their system. Are we going to become the arbiters of what is an adequate court system for everywhere in the world. And I don't think that it's our job in the State of Texas particularly where every other state has adopted a doctrine of forum non conveniens, particular[ly] where the federal government has adopted the doctrine of forum non conveniens. It is not the role of the state court or the state legislature in the State of Texas to say to every other country in the world whether it is third world, or second world or first world or whatever kind of world it is that you should have a court system that mirrors ours and so for that reason I would respectfully move to table . . . the Rodriguez amendment.

Debate on Tex. S.B. 2 on the Floor of the House of Representatives, 73d Leg., R.S. 11 (Feb. 22–23, 1993) (transcript available from Senate Staff Services Office). Thus, it is apparent, at least from the House proceedings, that the issue of the adequacy of the alternative forum under subsection (a) was considered and rejected.[5]

▪ Simply put, unlike the statutory provision for United States residents, the statutory provision for non-residents places no apparent constraints on what may constitute a forum, nor does the legislative history indicate an intent to do so. After reviewing the legislative history, we cannot conclude that the legislature intended that for subsection (a) to apply, the alternative forum must provide, as Jones argues, a court system that allows litigation between the parties. In addition, courts in other jurisdictions that apply the doctrine of forum non conveniens have generally accepted New Zealand as an alternative forum because victims do receive some compensation for their losses. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir.2001) ("The district court was not required to ask whether Plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses."); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 887 F.Supp. 1469, 1475 (N.D.Ala.1995) (finding that, for those plaintiffs who can pursue administrative claims in New Zealand and whose claims are not time-barred, New Zealand is alternative forum); *Stonnell v. Int'l Harvester Co.*, 132 Ill.App.3d 1043, 88 Ill.Dec. 203, 478 N.E.2d 518, 520 (1985) (determining that, despite fact that

---

5. The debaters in the House were aware that their comments might affect how the statute was interpreted: "I would say that our discussion right here, if some court hears our discussion, I hope that they would say this is part of the legislative intent of this particular statute and this particular section." Debate on Tex. S.B. 2 on the Floor of the House of Representatives, 73d Leg., R.S. 3 (Feb. 22–23, 1993) (statement of Representative Robert Junell) (transcript available from Senate Staff Services Office).

plaintiffs may recover less damages, New Zealand was available alternative forum). We agree with these courts that New Zealand is a forum for purposes of forum non conveniens analysis.

For the above-stated reasons, the trial court did not abuse its discretion in dismissing Jones's claims against Beech and Raytheon on the grounds of forum non conveniens.

### Conclusion

The judgment of the trial court is affirmed.

Dissenting opinion by SANDEE BRYAN MARION, Justice.

Dissenting opinion by SANDEE BRYAN MARION, Justice.

I must respectfully dissent. I believe the plain language of the forum non conveniens statute, which states "an action . . . would be more properly heard in a forum outside this state," necessarily means that the alternate forum be one in which the plaintiff is authorized to pursue its claim against the alleged wrongdoer. Webster's Dictionary defines "action" as a legal proceeding by which one demands or enforces one's right in a court of justice. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 21 (1981). "Forum" is defined as the particular court before which a case can be tried. *Id.* at 896. Here, it is undisputed that no tort actions are allowed in New Zealand; therefore, I believe there is no alternate forum in which this action can be heard. Further, a review of the legislative history of the statute, the case law subsequent to the enactment of the statute, and a recent amendment to the statute convinces me that it was the legislative intent that for an

"action" to be "heard" in a "forum outside this state" means a forum where the plaintiff is allowed to bring the "action" against the alleged tortfeasor.

As the majority points out, Fred Baron, one of the drafters of the statute, appeared before the Senate Economic Development Committee in support of the bill. In addition to the comments the majority quotes, Mr. Baron further explained, "Well I think justice encompasses a fundamental fairness to the parties and *would permit a party to be able to prosecute a lawsuit* without . . . political interference. And if it turns out that the alternative forum in another country or another jurisdiction would not permit that individual to do so then the interest of justice would require that it be continued to be handled in Texas."[1] (Emphasis added.) It is undisputed that a plaintiff may not prosecute a negligence lawsuit, such as this one, in New Zealand because that system does not allow such suits.

Since the enactment of the forum non conveniens statute, the Fort Worth Court of Appeals held that the factors enumerated in subsection (b) of section 71.051 were instructive in a determination of whether a trial court should dismiss an action under subsection (a). *See Baker v. Bell Helicopter Textron, Inc.,* 985 S.W.2d 272, 277 (Tex.App.—Fort Worth 1999, pet. denied). One of these factors is whether an alternate forum exists in which the claim or action may be tried. *Id.* The recent amendment of section 71.051 lends support to the holding in *Baker.* The Legislature has enacted "An Act Relating to Reform of Certain Procedures and Remedies in Civil Actions," which will be effective Septem-

---

1. *Section 71.051 Forum Non Conveniens: Hearing on Tex. S.B. 2 Before the Senate Econ. Dev. Comm.,* 73rd Leg., R.S. 11 (Jan. 26, 1993) (transcript available from Senate Staff Services Office).

ber 1, 2003.[2] This reform was enacted out of a concern for the "environment of excessive litigation," in Texas and "to address and correct problems that currently impair the fairness and efficiency of our court system."[3] As part of the reform, section 71.051 was amended to remove any distinction between plaintiffs who are legal residents of the United States and plaintiffs who are not legal residents. Subsection (a) of section 71.051 has now been repealed, and subsection (b) amended to provide that "[i]f a court of this state . . . finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action."[4] The six factors in the current subsection (b) that a trial court may consider in determining wheth-er to grant a motion to dismiss an action under the doctrine of forum non conveniens remain unchanged.[5] One factor to consider is whether the claim or action "may be tried" in the alternate forum.[6]

The language of the statute, the statements before the Senate committee, as well as the holding in *Baker*, envision a forum in which the plaintiff's claim is tried and its grievance against the wrongdoer is heard. There is no dispute here that Jones's action against Beech and Raytheon cannot be "heard" or "tried" in New Zealand. For that reason, I believe the trial court erred in dismissing Jones's claims under the forum non conveniens statute.

2. Act of June 1, 2003, 78th Leg., R.S., Tex. H.B. 4, art. 3, § 3.04 (Text available at http://www.capitol.state.tx.us).

3. House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 4, 78th Leg., R.S. 1 (2003).

4. Act of June 1, 2003, 78th Leg., R.S., Tex. H.B. 4, art. 3, § 3.04 (Text available at http://www.capitol.state.tx.us).

5. *Id.*

6. *Id.; see also* Act of Mar. 4, 1993, 73d Leg., Ch. 4, 1993 Tex. Gen. Laws 10 (amended 1997).