

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00338-CV

Susan **MOULTON**,
Appellant

v.

Michel **SHANE**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 2017CV04847
Honorable Timothy Johnson, Judge Presiding[1]

Opinion by:    Irene Rios, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

Susan Moulton sued Michel Shane, a California resident, for breach of contract arising from his alleged failure to complete a documentary film partially funded by Moulton through the crowd-funding internet website Kickstarter.com. The trial court granted Shane's special appearance and dismissed Moulton's lawsuit for lack of personal jurisdiction. Moulton contends that she demonstrated that Shane established sufficient minimum contacts with Texas to warrant the exercise of specific personal jurisdiction.

---

[1] The Honorable Timothy Johnson presided over the underlying case by assignment.

**Facts**

In the spring and summer of 2013, Michel Shane, a California resident, used the crowd-funding internet website Kickstarter.com to advertise and solicit investments in a documentary film project entitled "PCH: Probably Cause Harm" ("PCH film"). The subject of the planned film was described as exploring why so many people are killed on the Pacific Coast Highway in Malibu, California. The genesis of the PCH film was the death of Shane's own teenage daughter while crossing the Pacific Coast Highway.

The Kickstarter page for the PCH film attracted Susan Moulton's attention because her young son had, some years earlier, been killed in a traffic accident in Hawaii. After reviewing the information provided on the Kickstarter page and speaking with Shane by telephone, she contributed $10,000 to the project. As one of the "rewards" promised in connection with this contribution, Moulton was to be named as an executive producer in the PCH film's credits. Because the film has not yet been completed, she has not been credited as an executive producer.

Moulton sued Shane for breach of contract based on the Kickstarter Terms of Use. She alleges that those Terms of Use constitute a legally binding contract between herself and Shane because he solicited funds through Kickstarter and she responded to that solicitation by investing funds through Kickstarter. She further alleges that, pursuant to that alleged contract, Shane is obligated to return her $10,000 investment because he did not complete the PCH film by an estimated completion date of November 2013 and, because there is no completed film, she has not been credited as an executive producer. Moulton acknowledges that Shane is a resident of California, but contends that he had sufficient minimum contacts with Texas to warrant the exercise of specific jurisdiction over him.

Shane filed a special appearance asserting that he is a resident of California and lacks the minimum contacts required for a Texas court to exercise personal jurisdiction. Subject to that

special appearance, he also asserted a motion to dismiss and enforce a forum selection clause contained in the Kickstarter Terms of Use. Because we uphold the trial court's ruling sustaining Shane's special appearance, we need not address the parties' arguments concerning the fiduciary shield doctrine or the forum selection clause.

Neither party presented testimony at the special appearance hearing. Moulton relied on her affidavit, which states the following purportedly jurisdictional facts:

- Moulton is a Texas resident and was a Texas resident at the time she invested in the PCH film project;

- Kickstarter identified Shane as the creator of the PCH film project;

- Shane regularly posted updates on the project page concerning the status of the project and its funding;

- Shane called Moulton on her cell phone, which has a 210 area code, while Moulton was in Hawaii;

- Moulton told Shane that she lived in Texas;

- Moulton made her investment using a credit card with a billing address in Texas;

- Moulton received T-shirts (part of the promised "rewards" for her investment) at her address in Texas;

- Moulton would have accepted delivery of other promised "rewards" at that address and would have arranged for a private recital (another "reward") to take place in Texas.

Shane relied on the factual statements contained in his verified special appearance, including that he is a resident of California, production of the PCH film is ongoing in California, and Shane's only contact with Moulton was through the Kickstarter platform and communications to set up a meeting in Los Angeles. Shane did not ever travel to Texas, did not engage in any negotiations or discussions with Moulton in Texas, and did not make any promises or representations that any action would be taken in Texas. In addition, Shane stated that he has "no bank accounts, offices, property, employees, or agents in Texas related to this documentary project

or otherwise." He does not personally sell products or services in Texas and does not pay taxes in Texas. Other than his contact with Moulton, he "has not had phone conversations or email interactions with anyone in Texas related to this project or his business." Moulton did not controvert any of these factual assertions.

After considering the special appearance, evidence, and argument of counsel, the trial court signed an order sustaining the special appearance and dismissing the suit for lack of personal jurisdiction.

## Discussion

### *Standard of review.*

Whether a Texas court may exercise personal jurisdiction over a nonresident defendant presents a question of law. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). A trial court's ruling on a special appearance is therefore reviewed *de novo*. *Retamco*, 278 S.W.3d at 337; *Moki Mac*, 221 S.W.3d at 574. When, as in this case, the trial court does not make findings of fact and conclusions of law in support of its ruling, the reviewing court infers all facts necessary to support the judgment that are supported by the evidence. *Retamco*, 278 S.W.3d at 337; *Moki Mac*, 221 S.W.3d at 574.

### *Standard for the exercise of personal jurisdiction.*

Texas courts may exercise personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is both authorized by the Texas long-arm statute and "consistent with federal and state constitutional due-process guarantees." *Retamco*, 278 S.W.3d at 337 (quoting *Moki Mac*, 221 S.W.3d at 574). But, because the Texas long-arm statute reaches as far as federal due process will allow, the analysis is narrowed to a consideration of constitutional due process requirements. *Retamco*, 278 S.W.3d at 337; *Moki Mac*, 221 S.W.3d at 575.

Constitutional due process analysis involves two inquiries: (1) whether the nonresident defendant has established minimum contacts with Texas, and (2) whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *Retamco*, 278 S.W.3d at 338; *Moki Mac*, 221 S.W.3d at 575.

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338 (internal quotation marks omitted). This "purposeful availment" inquiry encompasses three factors: "First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction." *Retamco*, 278 S.W.3d at 339 (quoting *Moki Mac*, 221 S.W.3d at 575).

Purposeful availment alone is not sufficient to support the exercise of specific jurisdiction. *Retamco*, 278 S.W.3d at 340. It is also necessary to demonstrate that "the defendant's liability arises from or relates to the forum contacts." *Id.* In other words, there must be a substantial connection between the defendant's contacts with the forum and the operative facts of the lawsuit. *Retamco*, 278 S.W.3d at 340; *Moki Mac*, 221 S.W.3d at 585.

*Minimum contacts analysis—purposeful availment.*

Moulton contends that Shane has established minimum contacts with Texas because (1) he posted a project page on Kickstarter.com to solicit investments in the PCH film, and that posting "reached" her, a Texas resident; (2) he spoke about the film with her on the telephone; (3) she told him she was a Texas resident; (4) she made her investment using a credit card with a Texas billing address; and (5) she received "reward" tee shirts in Texas.

Moulton admits that Shane's initial contact with her in Texas was "in some ways fortuitous." But she insists that it was intentional because Shane used Kickstarter.com, giving him "the opportunity to reach potential investors from any state as well as other countries." This, however, tends to *refute* the notion that Shane intentionally directed his solicitation efforts to Texas or intended to reach a Texas target audience. "[T]he facts alleged must indicate that the seller *intended to serve the Texas market. . . .* This rule accords with the due-process requirement that a nonresident defendant must take action that is purposefully directed *toward the forum state.*" *Moki Mac*, 221 S.W.3d at 577 (emphasis added; citations omitted).

The use of a website with national and international reach by a California resident to promote a California project does not constitute any evidence of purposeful action directed toward Texas. The fact that a Texas resident happened to view and respond to Shane's post is no more than a "random, fortuitous, or attenuated" contact with Texas that is insufficient to support a finding of purposeful availment. *See Retamco*, 278 S.W.3d at 339; *Moki Mac*, 221 S.W.3d at 575.

In connection with her reliance on Shane's use of the Kickstarter website, Moulton invites the Court to engage in a "sliding scale" analysis first recognized by this Court in *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767 (Tex. App.—San Antonio 1999, pet. dism'd w.o.j.).[2] The Court explained:

> In Texas, Internet use is categorized in three areas on a sliding scale for jurisdictional purposes. At one end of the scale are situations in which a defendant clearly does business over the Internet by entering into contracts with residents of other states that involve the knowing and repeated transmission of computer files over the Internet. At the other end of the scale are passive web site situations. A passive web site, which solely makes information available to interested parties, is not grounds for personal jurisdiction. . . . In the middle are "interactive" web sites, which permit a user to exchange information with the host computer (the person or company maintaining the web site). In these cases, the exercise of jurisdiction is

---

[2] *Jones* was abrogated on other grounds by *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 n.1 (Tex. 2002).

determined by examining the level of interactivity between the parties on the web site.

*Id.* at 772-73 (citations omitted); *see Reiff v. Roy*, 115 S.W.3d 700, 705-06 (Tex. App.—Dallas 2003, pet. denied) (compiling Texas cases employing this analysis).

Use of the "sliding scale" analysis does not advance Moulton's effort to establish personal jurisdiction. The "sliding scale" analysis properly applies to situations where the website in question is controlled by the defendant rather than by a third party. *See Wilkerson v. RSL Funding, L.L.C.*, 388 S.W.3d 668, 676 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The defendant in *Wilkerson* posted negative reviews of the plaintiff on Yahoo! and Yelp websites. The court of appeals declined to employ the "sliding scale" analysis to determine whether this internet use supported exercising personal jurisdiction over the defendant.

> [T]o the extent that the interactive features of Yahoo! and Yelp are the creations of the owners and operators of those websites, the interactive nature of a large-scale ubiquitous internet presence cannot be fully imputed to an individual user . . . for the purposes of determining whether he established minimum contacts with Texas sufficient to justify exercising jurisdiction over him. Most Texas cases which apply the sliding-scale jurisdictional analysis to claims based upon internet usage arise from a nonresident defendant's ownership and operation of its own website. The analysis of a website's interactivity is not as useful when determining whether due process permits jurisdiction to be exercised over a third-party individual user of the website.

*Wilkerson*, 388 S.W.3d at 676 (footnotes omitted); *see Jones*, 995 S.W.2d at 773 (defining interactive websites as permitting a user to exchange information with "the person or company maintaining the web site").

The *Wilkerson* court noted that, while a website itself may be interactive, a third party's use of that website may be passive, for example, by simply posting information. *Id.* Passive use of a website does not support the exercise of jurisdiction under the sliding scale analysis. *Id.* "Likewise, because the contacts supporting the exercise of jurisdiction must be purposeful, and

not random, isolated, or fortuitous, jurisdiction . . . should not be based solely upon the passive, non-targeted postings of an individual website user." *Id.* at 677.

Shane neither owns nor operates the website here at issue, Kickstarter.com. And even assuming that Kickstarter's website itself is interactive, as Moulton contends,[3] Shane's use of that website was not. This is supported by the Kickstarter Terms of Use, which essentially provide that "Project Creators"[4] like Shane and "Backers" like Moulton do *not* interact through the website:

> For all campaigns, Kickstarter gives to the Project Creator each Backer's User ID and pledge amount. For successful campaigns, Kickstarter additionally gives to the Project Creator each Backer's name and email.

> For some rewards, the Project Creator needs further information from Backers . . . . The Project Creator shall request the information directly from Backers at some point after the fundraising campaign is successful. To receive the reward, Backers agree to provide the requested information to the Project Creator within a reasonable amount of time.

It is clear that the exchange of information between a Project Creator and a Backer does not occur via the Kickstarter website. Rather, contact information is initially provided through Kickstarter as an intermediary, and the parties then communicate directly with one another.

The record shows that Shane posted a project on Kickstarter.com and periodically posted informative updates. This is passive use akin to the posting of reviews on Yahoo! and Yelp that was at issue in *Wilkerson*. We agree with the *Wilkerson* court that the sliding-scale analysis does not apply in these circumstances and that the proper test is "the constitutional standard of purposeful availment." *See* 388 S.W.3d at 677. We therefore return now to that analysis.

---

[3] Interestingly, the Kickstarter Terms of Use expressly state that users "agree that the Company and its Services are *deemed a passive website* that does not give rise to personal jurisdiction . . . either specific or general, in any jurisdiction other than the State of New York." Moulton alleges that these Terms of Use constitute the contract between herself and Shane. Even so, contrary to this contractual provision, she contends that Kickstarter.com is not a passive website.

[4] The parties dispute whether Shane or his company, The Handpicked, LLC, was the Project Creator. We assume, without deciding, for purposes of this discussion that Shane was the Project Creator.

Moulton urges that Shane established minimum contacts with Texas because he called her on her cell phone, which has a Texas area code. But "changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of 'caller ID' may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005). This is aptly demonstrated by Moulton's own affidavit testimony, which establishes that she received Shane's phone call while she was in Hawaii. The fact that her cell phone has a Texas area code is simply of no consequence.

Similarly, Moulton's use of a credit card with a Texas billing address is of no consequence. The purposeful availment inquiry focuses only on the nonresident defendant's contacts with Texas, "not the unilateral activity of another party." *Retamco*, 278 S.W.3d at 339; *Moki Mac*, 221 S.W.3d at 575. Moulton's choice of payment methods was a unilateral activity on her part that does not create a Texas contact attributable to Shane. In addition, the Kickstarter Terms of Use indicate that Moulton's payment did not go directly to Shane: "Funds pledged by Backers are collected by Amazon Payments"; "Kickstarter and its payments partners will remove their fees before transmitting proceeds of a campaign"; "There may be a delay between the end of a successful fundraising campaign and access to the funds." Shane had no control over, and no connection with, Moulton's use of a credit card. The billing address associated with that card has no bearing on our jurisdictional analysis.

The only activity identified by Moulton that arguably shows Shane engaging in an intentional contact with Texas is the delivery of promotional tee shirts to her residence in Texas. But, while "a single contact can support jurisdiction if that contact creates a 'substantial connection' with the forum, jurisdiction cannot be established where the contact creates only an

'attenuated' affiliation with the forum." *Moki Mac*, 221 S.W.3d at 577. The tee shirt delivery contact, at best, creates "only an 'attenuated' affiliation" with Texas. *See id.*

The circumstances presented in *Michiana* are instructive. The nonresident defendant there had no employees or property in Texas, was not authorized to do business in Texas, did not advertise its products in Texas or on the internet, and did not solicit business in Texas. 168 S.W.3d at 784. The sale of the RV at issue (which was constructed and equipped outside of Texas) was initiated entirely by the plaintiff (a Texas resident), paid for outside of Texas, and shipped to Texas at the plaintiff's request and expense. *Id.* The basis of the lawsuit was an alleged misrepresentation concerning the sale made in a telephone call. *Id.* The supreme court held that, "[b]ecause Michiana's only contact with Texas was [the buyer's] decision to place his order from there," the Texas court lacked personal jurisdiction over him. *Id.* at 794.

In a later discussion of *Michiana*, the supreme court noted that the nonresident defendant's sale of an RV to a Texas resident "resulted from the mere fortuity that [the buyer] happened to reside there." *Moki Mac*, 221 S.W.3d at 577. It concluded that "the mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts." *Id.*

In the present case, the delivery of tee shirts to a Texas address "resulted from the mere fortuity that [Moulton] happened to reside there." *See id.* This contact is as attenuated as was the contact found to be insufficient to support jurisdiction in *Michiana*. Indeed, it is even more attenuated. In *Michiana*, the RV that was delivered to a Texas resident in Texas was the subject of the lawsuit. *Michiana*, 168 S.W.3d at 781. In this case, while tee shirts were delivered to Moulton as a "reward" for her investment in the PCH film, they are tangential to the dispute between the parties. There is no allegation that the shirts were defective or otherwise form any part of Moulton's breach of contract claim. This single delivery does not create a "substantial connection"

with Texas; at most, it demonstrates only an "attenuated affiliation" that is insufficient to establish jurisdiction. *See Moki Mac*, 221 S.W.3d at 577

*Minimum contacts analysis—benefit, advantage or profit.*

"Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's law, a nonresident consents to suit there." *Michiana*, 168 S.W.3d at 785. Thus, a nonresident defendant's activities must be such as would "justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Retamco*, 278 S.W.3d at 338.

*Michiana* is again instructive. The supreme court there noted that "it is hard to imagine what possible benefits and protection Michiana enjoyed from Texas law." *Id.* at 787. The court acknowledged, and dismissed, the fact that Michiana clearly anticipated a profit from the sale of the RV. *Id.* at 788. "[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *Id.* at 788. Because Michiana had no cognizable contact with Texas, reaping a profit from the single sale to a Texas customer was insufficient to support jurisdiction.

It is similarly "hard to imagine what possible benefits and protection [Shane] enjoyed from Texas law." *Id.* He clearly anticipated a financial benefit from Moulton's investment. But, as discussed above, that investment had only a collateral relation to Texas. Because the financial benefit to Shane did not "stem from a constitutionally cognizable contact with" Texas, it does not support the exercise of personal jurisdiction. *See id.*

*Conclusion*.

The record does not demonstrate that Shane established minimum contacts with Texas or engaged in any activity that would justify a conclusion that he could reasonably anticipate being called into a Texas court. *See Retamco*, 278 S.W.3d at 338. Moulton has failed to demonstrate any

basis upon which a Texas court may constitutionally exercise personal jurisdiction over Shane. We therefore need not address the remaining issues.

The order of the trial court sustaining Shane's special appearance and dismissing Moulton's lawsuit for lack of personal jurisdiction is affirmed.

Irene Rios, Justice