Jerry WILKERSON, Appellant

v.

RSL FUNDING, L.L.C., Appellee.

No. 01–10–01001–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 11, 2011.

Rehearing En Banc Overruled
Dec. 12, 2011.

William Book, Tekell, Book, Allen & Morris LLP, Houston, TX, for Appellant.

John R. Craddock, Stewart A. Feldman, Susan Hatcher Knight, The Feldman Law Firm LLP, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

In this interlocutory appeal, Jerry Wilkerson appeals the trial court's order denying his special appearance. Appellee RSL Funding, L.L.C. sued Wilkerson for defamation, libel, and business disparagement, all based upon statements made by Wilkerson on third-party internet sites. In his sole issue, Wilkerson contends the trial court erred in denying his special appearance and objection to jurisdiction. We find that the trial court lacked jurisdiction, and we therefore reverse and render a judgment of dismissal without prejudice.

## Background

California resident Jerry Wilkerson lives with his daughter, Trisha, who won the California state lottery. RSL Funding, L.L.C. is a financial services business that solicited Trisha by mail, offering to pay her a lump sum in exchange for a portion of her future lottery payments. Although RSL is headquartered in Houston, evidence submitted to the trial court suggests that the company advertised it had locations in New York, Chicago, Philadelphia, Washington, D.C., Los Angeles, West Palm Beach, and Atlanta.

Trisha assigned a portion of her future lottery payments to RSL in exchange for a lump-sum payment. Wilkerson had no direct financial interest in his daughter's transaction. However, Trisha had a bad experience dealing with RSL, and Wilkerson decided to post a review on the internet to express his dissatisfaction. He searched the internet for RSL, and he testified that he believed he posted his comments on RSL's website. Rather than finding RSL's own website, however, Wilkerson had found third-party web pages containing basic business information about RSL. These websites permitted users to post reviews about their experiences with featured businesses, and Wilkerson posted negative reviews about RSL on two such web pages.

One of these websites was maintained by the internet search engine Yahoo! (http://www.yahoo.com). The Yahoo! evidence presented by RSL included two exhibits: Exhibit C, which is an undated screenshot of part of a Yahoo! internet page, and Exhibit D, which is one page of a two-page printout from Yahoo! dated

March 18, 2010.[1] It is apparent from the face of each document that neither of them is a complete copy of the represented internet page.

The evidence produced by RSL showed that at the time the documents were prepared, a Yahoo! page relating to RSL included contact information for RSL's Houston office, including the address, a map showing its location, and a photograph of the building. A representative of RSL authenticated this evidence by attesting that proffered documents "are true and correct copies of the originals," but the affidavit does not explain what "originals" are depicted or how they were generated. Each of Exhibits C and D state at the top of the page: "Some details about this business have recently been edited by the community." There appears to have been a hyperlink that would have allowed the user to "View changes," but neither party introduced evidence of what those changes were, when they were made, or who made them. The user reviews section of the Yahoo! listing reflected that Wilkerson wrote:

> This is by far the worst experience I have had in my 64 years of life, dealing with all of the lies by Jim Kelly and the non returned promised phone calls by Jim and Mr. Sanchez from accounting. RSL has lied repeatedly to us and misled us and have caused numerous delays in this project that still has yet to be funded. Our experience shows that there is nothing rapid about Rapid Settlements and they are so unprofessional. Because of all the problems with Rapid and their violating the contract, we are in the process of a law suit against them and if there is anyone else out there who have had similar experiences with [R]ap-id, please join us in a class action law suit. I hate having to rate them with even 1 star as they do not deserve any. By the way, RSL represents themselves as a large company. Try calling any of their offices, N.Y., L.A., Atlanta etc and you will find that there are no offices there, only phone numbers that are transferred to the Houston Office. Very clever and manipulating of them. Just goes to show how they really conduct business, smoke and mirrors.

After his original review, Wilkerson posted two more comments. The first comment stated:

> RSL is still playing games as they think they have us over a barrel. So dishonest and disrespectful, will not even return a phone call. But the kicker is RSL has put out so much negative Karma into the air that when their time comes, it will return to them 10 fold in a negative manner. I just hope they remember where it came from and change their ways to treat people and clients fairly and professionally.

Wilkerson's second comment to his Yahoo! review stated:

> Received our check today and now we are able to find out why RSL was so arrogant and mean and delaying everything. They did not have the money. The check is no good NSF, non sufficient funds. Guess their word is as good as their check.

The Yelp website (http://www.yelp.com) contained a similar page with information about RSL. The evidence produced by RSL showed that at the time Yelp was accessed for purposes of opposing Wilkerson's special appearance, the accessed page included RSL's Houston address and

---

1. The last of Wilkerson's Yahoo! postings was dated November 20, 2009. RSL's original petition alleging defamation, libel, and business disparagement by both of the Wilkersons was filed on November 25, 2009.

a map.[2] That page reflected that Wilkerson had posted another review which stated: "This is the worst company I have ever dealt with in my life. Nothing but lies and misinformation...." Subsequently, Wilkerson posted a comment to his own review, which stated:

> Received the check today from RSL and guess what, it appears their word is as good as their check[.] NSF NON SUFFICIENT FUNDS. I can see why they treated us so badly and were so rude and inconsiderate and kept delaying, because they don't have the money. What a joke they are.

There is no evidence that Wilkerson had anything to do with creating these webpages or their content other than the reviews and subsequent comments submitted by him. Furthermore, he testified in a deposition that he did not know how to target a specific geographic location, and that he did not know how to attach a map or photograph to his internet posting.

RSL sued Wilkerson, alleging defamation, libel, and business disparagement. Wilkerson filed a special appearance, objecting to the trial court's jurisdiction over him. He supported his special appearance with an affidavit stating he is a resident of California, does not own any property in Texas, has never owned any business in Texas, has only traveled through Texas once, and did not specifically direct any opinion or statement of fact concerning RSL to anyone in Texas.

RSL responded by claiming both websites used by Wilkerson "use geographic location as the key to their respective search options" and are "intended to help

a searcher find information in specific geographic areas." Based on these factual allegations, RSL contends that Wilkerson purposely directed his actions at Texas, and therefore he is subject to the jurisdiction of a Texas court for purposes of a tort claim based on those actions. The trial court overruled the special appearance, and Wilkerson brought this interlocutory appeal to challenge the ruling.

## Legal Standards for Personal Jurisdiction

Whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 445 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The plaintiff bears the initial burden of pleading jurisdictional facts sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex.2010). To establish jurisdiction over a nonresident defendant, the plaintiff must plead a "connection between the defendant['s] alleged wrongdoing and the forum state." *Id.* at 655. In a tort case, the plaintiff must plead that the defendant committed a tortious act in Texas. *Id.* at 659.

A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance bears the burden of negating all grounds for personal jurisdiction alleged by the plaintiff. *See, e.g., Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574

**2.** Although presented as two separate one-page documents labeled Exhibits E and F, it appears from the header and footer of the two pages that RSL's evidence from Yelp consists of one two-page printout generated on May 18, 2010 at 3:15 pm—approximately six months after Wilkerson's two Yelp postings dated November 16 and 20, 2009. As with the Yahoo! evidence, RSL provided no evidence about the circumstances of the creation of the documents.

(Tex.2007). The defendant can negate jurisdiction on either a factual or legal basis. *Kelly,* 301 S.W.3d at 659. To negate personal jurisdiction on a factual basis, the defendant may produce evidence showing that it has no contacts with Texas, which the plaintiff may then counter with its own evidence. *Id.* To negate jurisdiction on a legal basis, the defendant may establish that, even taking the alleged jurisdictional facts as true, "the defendant's contacts with Texas fall short of purposeful availment [of the forum] ... or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

■ Once the nonresident defendant has presented evidence to disprove the jurisdictional allegations, the plaintiff must then respond with its own evidence, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. *See Kelly,* 301 S.W.3d at 659; *Assurances Generales Banque Nationale v. Dhalla,* 282 S.W.3d 688, 695 (Tex.App.-Dallas 2009, no pet.). We review the trial court's determination de novo. *See Moki Mac,* 221 S.W.3d at 574. If findings of fact and conclusions of law are not issued, we infer "all facts necessary to support the judgment and supported by the evidence." *See id.*

■ "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co.*

*v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). A Texas court's exercise of personal jurisdiction over a nonresident defendant who allegedly committed a tort in the state is therefore limited by constitutional due process requirements.[3] Unless the defendant consents to appear, jurisdiction may be exercised over a nonresident defendant only when the defendant has purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there. *See, e.g., Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *See, e.g., Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84.

■ A nonresident defendant establishes minimum contacts with Texas by purposefully availing himself of the privileges of conducting activities in the state, thus invoking benefits and protections of its laws. *See, e.g., Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). We consider only the defendant's own contacts with the forum state, not the unilateral activities of third parties. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 784; *Kelly,* 301 S.W.3d at 660. The contacts relied upon must be purposeful, and not random, isolated, or fortuitous. *Burger*

---

3. Pursuant to the long-arm statute, Texas courts can exercise personal jurisdiction over a nonresident defendant that "does business" in Texas. Tex Civ. Prac. & Rem.Code Ann. § 17.042 (West 2008); *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002). Among other actions identified by the long-arm statute, a nonresident is considered to be "doing business" in Texas if he "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem.Code Ann. § 17.042(2); *Moki Mac,* 221 S.W.3d at 574.

*King,* 471 U.S. at 475, 105 S.Ct. 2174; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Michiana,* 168 S.W.3d at 785. When undertaking a minimum-contacts analysis, we consider the quality and nature of the defendant's contacts, rather than their number. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 230 n. 11 (Tex.1991). The defendant's activities, whether they consist of acts inside or outside of Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *See World-Wide Volkswagen,* 444 U.S. at 287, 100 S.Ct. at 562; *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). Although it is not determinative, foreseeability is an important consideration in deciding whether the nonresident has purposefully established minimum contacts with the forum state. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

▆▆▆ The minimum contacts analysis is further divided into specific jurisdiction based on contacts giving rise to a claim and general jurisdiction based solely on the extent of the defendant's contacts with the forum state. *BMC Software,* 83 S.W.3d at 795–96. RSL does not argue that the trial court could exercise general jurisdiction over Wilkerson. We therefore confine our analysis to specific jurisdiction.

### Analysis

▆▆▆ On appeal, Wilkerson contends that there is legally insufficient evidence that he purposefully availed himself of the privileges of conducting activities in Texas. In particular, he contends that there is no evidence he directed his comments about RSL toward Texas and that any contact his comments did have with Texas was merely fortuitous. Accordingly, Wilkerson argues that RSL failed to satisfy its burden to present evidence tending to establish jurisdiction. Though he characterizes it as a legal challenge, his dispute is a factual one because he countered RSL's factual allegation that the internet postings were directed at Texas with evidence that they were not. *See Kelly,* 301 S.W.3d at 659. Because Wilkerson negated RSL's jurisdictional claims, RSL was required to respond with evidence affirming its allegations. *Id.* We therefore must determine whether RSL adequately responded with evidence to establish jurisdiction, inferring any facts necessary to support jurisdiction that are supported by that evidence. *See Moki Mac,* 221 S.W.3d at 574.

RSL, in response, argues that the evidence demonstrates that Wilkerson directed his statements towards Texas. It relies on its factual allegations that Wilkerson's statements were published "on internet interactive websites which were specifically aimed at a Texas limited liability company, RSL, located in the Galleria area of Houston, Texas, and its employee, a Texas resident," and that Wilkerson posted his comments to "www.local.yahoo.com" and "www.yelp.com," sites alleged by RSL to "use geographic location as the key to their respective search options." RSL alleges that Wilkerson's "stated motivation . . . was that he was 'trying to drum up a class action lawsuit' " and that Wilkerson's statements were "part of a calculated scheme to destroy RSL's business." It also argues that Wilkerson's internet comments "constitute a substantial presence in the State of Texas," and that jurisdiction should be exercised over him "based on the effects of his California conduct in Texas."

### I. Inapplicability of "sliding scale" standard to individual website user

▆▆▆ The dispute presents a question of when personal jurisdiction may be

exercised over a defendant based solely upon his use of the internet. Both Wilkerson and RSL suggest that we should use the "sliding scale" analysis often used to evaluate whether jurisdiction may be exercised over a nonresident defendant based on the relative interactivity of its website.[4] However, to the extent that the interactive features of Yahoo! and Yelp are the creations of the owners and operators of those websites, the interactive nature of a large-scale ubiquitous internet presence cannot be fully imputed to an individual user such as Wilkerson for the purpose of determining whether he established minimum contacts with Texas sufficient to justify exercising jurisdiction over him. Most Texas cases which apply the sliding-scale jurisdictional analysis to claims based upon internet usage arise from a nonresident defendant's ownership and operation of its own website.[5] The analysis of a website's interactivity is not as useful when determining whether due process permits jurisdiction to be exercised over a third-party individual user of the website.[6]

■■■■■ While the websites at issue in this case may themselves be considered interactive, a third party's use of the website may, in effect, be a "passive" usage of

4. For purposes of establishing personal jurisdiction in cases involving internet usage, several Texas courts have used the "sliding scale" analysis first utilized in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *See, e.g., Choice Auto Brokers, Inc. v. Dawson*, 274 S.W.3d 172, 177–78 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *Karstetter v. Voss*, 184 S.W.3d 396, 404 (Tex.App.-Dallas 2006, no pet.); *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 507 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The court in *Zippo* observed that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F.Supp. at 1124. At one end of the range of activity, personal jurisdiction may be exercised over a nonresident defendant "clearly does business" in the forum over the internet, such as by entering into a contract with a forum resident involving the knowing and repeated exchange of data over the internet. *Id.* At the opposite end of the spectrum, personal jurisdiction may not be exercised over a nonresident based solely upon maintenance of a "passive" website when it has simply posted information on a website which is accessible to users in the forum. *Id.* The "middle ground" in the *Zippo* sliding-scale analysis is occupied by "interactive" websites permitting users to exchange information with the host computer. *Id.* The exercise of personal jurisdiction over a nonresident defendant operating such a website depends upon "the level of interactivity and commer-

cial nature of the exchange of information that occurs" on the site. *Id.*

5. *See, e.g., Choice Auto Brokers*, 274 S.W.3d at 178; *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658 (Tex.App.-Fort Worth 2001, no pet.); *Experimental Aircraft Ass'n*, 76 S.W.3d at 507; *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–37 (5th Cir.1999) (applying Texas law). *But see Karstetter*, 184 S.W.3d at 405 (applying sliding-scale standard to evaluate eBay internet auction site when claim was asserted against seller utilizing site).

6. *See, e.g., McGuire v. Lavoie*, No. Civ. A. 3:03–CV–0161–BH, 2003 WL 23174753, at *3 (N.D.Tex. Aug. 19, 2003) ("Because the majority of cases applying the [sliding scale] test involve a defendant's conduct over its own website, its application to an internet auction site is questionable."); *Action Tapes, Inc. v. Weaver*, No. Civ. 3:05–CV–1693–H, 2005 WL 3199706, at *2 (N.D.Tex. Nov. 23, 2005) ("The sellers and buyers who connect through eBay cannot be said themselves to control eBay's degree of commercial interactivity.... Accordingly, the 'sliding scale' standard is not applicable in this case."); *Attaway v. Omega*, 903 N.E.2d 73, 78 (Ind.Ct.App.2009) ("[The sliding scale] mode of analysis makes little sense in the eBay context since eBay, and not the user, controls the interactivity and marketing efforts of the website."); *Foley v. Yacht Mgmt. Grp., Inc.*, No. 08 C 7254, 2009 WL 2020776, at *3 n. 1 (N.D.Ill. July 9, 2009) (declining to apply sliding-scale approach and instead applying traditional analysis focusing on purposeful availment of forum).

the internet, i.e. an act of simply posting information which is accessible anywhere the internet is accessible. Such passive usages of the internet do not support jurisdiction over a non-interactive website under a sliding-scale analysis.[7] Likewise, because the contacts supporting the exercise of jurisdiction must be purposeful, and not random, isolated, or fortuitous, jurisdiction nor should not be based solely upon the passive, non-targeted postings of an individual website user. *See, e.g., Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 784. To conclude otherwise and uncritically evaluate an individual website user's contacts with the forum state based on interactive website features implemented by third-party website operators would also violate the principle that the relevant contacts are those of the defendant himself, and not the unilateral acts of third parties. *See, e.g., Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785.

■ In this case, Wilkerson did not own Yahoo! or Yelp, and the record contains no evidence that he exercised any control over the content of these websites other than his contribution of reviews and comments. Thus for purposes of analyzing personal jurisdiction over an individual in a case arising from his internet activity, we decline to reflexively apply the sliding-scale analysis of the interactivity of a commercial internet website to determine jurisdiction over the individual website user. Instead, we apply the constitutional standard of purposeful availment. *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240; *Michiana,* 168 S.W.3d at 784.

## II. Application of purposeful availment standard

■ Our conclusion that the full range of a website's interactive features should not be automatically imputed to an individual user when evaluating his minimum contacts with the forum does not preclude a showing that the individual user intentionally used a website's features to target a particular location under circumstances constituting purposeful availment. *Cf. Keeton,* 465 U.S. at 781, 104 S.Ct. at 1481 (1984) (state properly exercised personal jurisdiction over libel claim against nonresident magazine publisher that "continuously and deliberately exploited" forum state's market); *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) (state properly exercised personal jurisdiction over libel claim against nonresident journalists based on effects of publication in forum state when journalists were aware that forum state was location of publication's largest circulation). Accordingly we must evaluate RSL's contention that Wilkerson specifically directed his negative postings on Yahoo! and Yelp toward Texas.

### A. Website characteristics

RSL argues that Wilkerson purposefully availed himself of the benefits and protections of the laws of Texas by publishing his comments on websites which were "specifically aimed at a Texas limited liability company, RSL, located in the Galleria area of Houston, Texas, and its employee, a Texas resident," and that Wilkerson posted his comments to sites alleged by RSL to "use geographic location as the key to their respective search options."

■ RSL produced no evidence to support its allegation that Wilkerson used "www.local.yahoo.com" to publish his comments in some fashion specifically associated with Houston. There is only evidence that RSL printed out a Yahoo! webpage that included a "local" reference in its web

---

7. *See, e.g., Zippo,* 952 F.Supp. at 1124; *Choice* *Auto Brokers,* 274 S.W.3d at 177–78.

address (i.e. its uniform resource locator, or URL). The evidence that Wilkerson's comment was associated with Houston-related content on Yahoo! is not evidence that Wilkerson was responsible for that association, particularly if RSL or its Houston-based attorneys prepared the evidence of what appears on Yahoo! from their Houston-located computers.[8] Nevertheless, based on the "local" URL reflected in the printout submitted to the trial court, RSL argues without record citations or any competent evidentiary support:

> The "local" name used by local.yahoo.com serves as a key clue on what is intended with the information provided. That is, it is intended to help you find information in specific geographic areas. More likely than not it will be residents of the Houston area in particular, or Texas residents in general, that will search RSL Funding located in Houston Texas.

Even if RSL's assertion in this regard is true, the geography related to the intentions of the website operator or a hypothetical web searcher, without more, is not relevant to our analysis of whether Wilkerson had the minimum contacts with Texas necessary to support jurisdiction in this case.[9]

While the evidence presented by RSL shows that Yahoo! and Yelp maintain webpages containing business listings for the Houston office of RSL, that evidence does not demonstrate that the websites themselves "aim at" any entity or person in Texas, or that they otherwise target Texas residents. And we may not consider the actions of Yahoo! and Yelp to use geographic location to facilitate searches performed by other users unrelated to this dispute. The unilateral activities of the website operators cannot be the basis for exercising personal jurisdiction over an individual user. *See, e.g., Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 784. Likewise, the unilateral activities of internet users who might use the search functions of Yahoo! and Yelp to find business information in a particular geographic location cannot be the basis for exercising jurisdiction over Wilkerson in this case.

In any case, even if the evidence showed that Yahoo! and Yelp targeted Texas, standing alone that evidence would not establish that Wilkerson knew or should known have his comments posted on Yahoo! and Yelp were targeting Texas or any other specific geographic location.[10] With-

---

8. *See generally* Kevin F. King, *Personal Jurisdiction, Internet Commerce, and Privacy: The Pervasive Legal Consequences of Modern Geolocation Technologies,* 21 ALB. L.J. SCI. & TECH. 61, 73–75 (2011) (explaining how websites utilize geolocation tools to "modify generic content ... to highlight aspects that are most relevant to a user's specific location").

9. In a somewhat similar vein, the dissent repeatedly and emphatically refers to Yahoo! and Yelp as "local websites," as if Wilkerson's postings appeared in the internet equivalent of a local newspaper. The evidence does not support that characterization. Even to the extent we might take judicial notice that Yahoo! and Yelp organize some of their content to associate it with a particular locality, no

evidence was produced in the trial court that Wilkerson associated his comments with Houston-specific content on those websites or that he deliberately used Yahoo! or Yelp anticipating that those websites would do it for him. Indeed the only evidence on this subject, Wilkerson's testimony, was to the contrary.

10. Indeed, the substance of Wilkerson's communication indicates that he was addressing a more generalized and nontargeted audience of RSL's past, current, or future clients who believed based on RSL's advertising that it had offices in places other than Houston. As noted above, he wrote on Yahoo!: "Try calling any of their offices, N.Y., L.A., Atlanta etc and you will find that there are no offices

out evidence of the defendant's knowledge or reasons to know of the website's activities to target a specific geographic area, imputing those activities to the defendant would be the same as subjecting him to jurisdiction based the unilateral actions of others.

RSL presented no evidence about how Wilkerson posted his comments in a way directed at Texas. It merely created some printouts of the web pages at issue and submitted them to the trial court without any demonstration of the origins of the depicted information that it now relies upon to claim that Wilkerson was targeting Texas.[11] The only competent evidence on that subject was Wilkerson's own deposition testimony that he conducted an internet search and posted comments on what he thought were websites operated by RSL. Wilkerson specifically denied targeting Texas; RSL produced no evidence tending to show that is not true. The evidence therefore does not support RSL's factual allegation, factually refuted by Wilkerson, that Wilkerson deliberately used a website oriented towards, aiming

at, or otherwise specifically targeting Texas.

## B. Website content

RSL argues that because the websites, in addition to Wilkerson's comments, contained a photograph of RSL's building, a Houston address, and a map showing RSL's location in Houston, Wilkerson purposefully directed his conduct at the forum of Texas. RSL's brief goes so far as to state that "Wilkerson even provided a map and a photo of RSL's Galleria location in his posting." But that is not what the evidence submitted by RSL shows.

Once again, the only evidence produced by RSL to support its factual allegations are its own printouts from the Yahoo! and Yelp webpages. Those printouts are evidence of the substance of Wilkerson's comments, the authorship of which he does not dispute. But they are not evidence that Wilkerson supplied any information about RSL other than the text of his comments, such as an address, a map, a photograph, or any other content which websites such as Yahoo! and Yelp routinely compile on their own and combine with user-submitted content.[12] For this reason, the evi-

there, only phone numbers that are transferred to the Houston Office."

11. The deficiency in RSL's evidence is one of substance, not form, because it does not establish that Wilkerson's actions were purposefully or deliberately directed at Texas. Proof that Wilkerson's comments were ultimately associated with a webpage that included "local" in its URL is only relevant if the evidence shows that Wilkerson intentionally directed his comments to a local website. RSL produced evidence of what it found without producing evidence that reflects what Wilkerson did when he posted his comments.

12. Although not part of the evidentiary record, it is common knowledge, and we thus take judicial notice, that websites such as Yahoo! and Yelp commonly repackage and republish user contributions along with other information like the maps, addresses, photographs, and other identifying characteristics

relied upon by RSL. *See Yahoo! Terms of Service*, Yahoo!, at § 9 (Nov. 24, 2008), http://info.yahoo.com/legal/us/yahoo/utos/utos–173.html (providing that users submitting content to Yahoo! grant the website operator a license to "to use, distribute, reproduce, modify, adapt, publish, translate, publicly perform and publicly display such Content (in whole or in part) and to incorporate such Content into other works in any format or medium now known or later developed"); *Terms of Service*, Yelp, at § 5(B) (July 21, 2010), http://www.yelp.com/static?p=tos ("We may use Your Content in a number of different ways, including publicly displaying it, reformatting it, incorporating it into advertisements and other works, creating derivative works from it, promoting it, distributing it, and allowing others to do the same in connection with their own websites and media platforms . . . .").

dence submitted by RSL would not support a conclusion that the photograph, Houston address, or map were directly caused by Wilkerson to appear on the webpages, or that Wilkerson even deliberately associated his comments with those elements of the webpages. Indeed, in his deposition Wilkerson disclaimed doing any such thing, and that is the only competent evidence on the subject that was presented to the trial court.

■ Likewise, the aspects of RSL's evidence reflecting other localized Houston content is not evidence that Wilkerson deliberately associated his comments with a Houston-oriented aspect of either Yahoo! or Yelp. Again, Wilkerson denied doing that, and he also specifically denied knowledge of how to do any such thing. The fact that Houston-based RSL represented by Houston-based attorneys obtained Houston-oriented content when accessing Yahoo! and Yelp is no evidence of what Wilkerson saw, did, or intended when he posted his comments. The present-day reality of the ever-evolving internet is that the content seen by any particular user is often customized by the website based on the geographic location of the person viewing the website, or the geographic location of the same person's computer servers, or other characteristics associated with the person visiting the webpage. Jurisdiction therefore may not be exercised over a nonresident user based on his use of a website based upon the mere evidence that the website incorporated Texas-related content of an unknown origin, particularly when that evidence only shows the website's content as viewed by a different user at a later time in a presumably different location.

## C. Substance of internet communications

In a personal jurisdiction analysis, only the nonresident defendant's own purposeful contacts with Texas are considered. *See, e.g., Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84; *Michiana,* 168 S.W.3d at 785. Thus, because RSL is not relying upon any other alleged contacts between Wilkerson and the state of Texas, our jurisdictional inquiry is limited to whether Wilkerson's internet commentary alone was sufficient to justify a Texas court exercising specific jurisdiction over him.

RSL has presented no evidence that Wilkerson's comments were purposefully directed at Texas, as would be required for him to be subject to suit in Texas.[13] The evidence merely shows that he performed an internet search for RSL, and that he posted reviews and comments on two different websites where he found an opportunity to do so. Wilkerson made only one express reference to RSL's presence in Texas, stating in his Yahoo! review that phone calls made to offices other than RSL's Houston office are transferred to Houston. Although he mentioned two employees by name, he did not identify where those employees work.[14] RSL's evidence

13. *See, e.g., Shrader v. Biddinger,* 633 F.3d 1235, 1244 (10th Cir.2011) ("defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message").

14. In any case, simply referencing Texas or Texas residents is not sufficient to demonstrate that Texas was specifically targeted by the allegedly tortious statements. *See, e.g., Johnson v. Arden,* 614 F.3d 785, 796 (8th Cir.2010) (no targeting of Missouri sufficient to support exercise of specific personal jurisdiction based upon allegedly defamatory internet posting stating that "Sue Johnson [a Missouri resident] and Cozy Kittens [a Missouri limited liability company] operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a 'kitten mill' in Unionville, Missouri.").

shows nothing to the contrary. RSL produced no competent evidence about the circumstances of Wilkerson's postings obtained from Yahoo! or Yelp or from any other source to support their contention that Wilkerson specifically targeted Texas with his comments, and Wilkerson's testimony about his actions directly contradicts RSL's allegation.

RSL also argues that Wilkerson's purposeful availment of Texas is demonstrated by his solicitation of Texas residents to join in a lawsuit against RSL. However, that comment did not mention where the alleged lawsuit was filed or intended to be filed, nor did it indicate in any way that Texas residents were being recruited as opposed to any other disgruntled client of RSL.[15] The reviews and subsequent comments suggest that Wilkerson was addressing a global internet audience of potential RSL clients, not exclusively or primarily Texas residents. Moreover, nothing in the record shows that Wilkerson sought any benefit, advantage, or profit by availing himself of Texas, as is required for personal jurisdiction. *See Michiana*, 168 S.W.3d at 785. He was not part of the transaction between RSL and his daughter, nor did he have any direct financial interest in it.

**D. Effect of internet communications**

Finally, RSL suggests that Wilkerson's postings constitute a substantial presence in Texas, the effect of which is sufficient to justify exercising jurisdiction over him. In support of this argument that jurisdiction is proper based on the Texas effects of Wilkerson's comments, RSL asserts:

"Those likely to be searching for RSL (or for relevant keywords) will be looking for such in Houston, Texas. Regardless, the search results will come up as being categorized in Houston, Texas."

■ Apart from the consideration that we cannot consider the unilateral acts of others in conducting our analysis, *see, e.g., Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183–84, we note also that jurisdiction may not be based solely on the effects or consequences in the forum state resulting from allegedly tortious conduct. *See Michiana*, 168 S.W.3d at 789 (citing *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex.1995)). "Instead, it is 'the defendant's conduct and connection with the forum' that are critical." *Id.* (quoting *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183). Thus, in *Calder v. Jones*, the United States Supreme Court justified the exercise of jurisdiction over nonresident reporters in a libel case based upon the extent of the defendants' activities (knowingly reporting for a publication which sold over 600,000 weekly copies in the forum state) and not merely the residence of the plaintiff. *See* 465 U.S. 783, 785 n. 2, 104 S.Ct. 1482, 79 L.Ed.2d 804; *see also Michiana*, 168 S.W.3d at 789.

In this case, Wilkerson has no record of continuously and knowingly directing internet commentary toward an identifiable Texas audience, such as would be necessary to analogize the circumstances to *Calder*. We therefore conclude that the comments' alleged effects in Texas are inadequate to justify exercising jurisdiction in the absence of other evidence demon-

---

**15.** In his deposition, Wilkerson testified that there was no lawsuit. He said, "I was just trying to drum up some business for a class action lawsuit possibly after reading the reviews and reading past histories of RSL." He was not asked whether this comment was directed toward Texas residents, and considering that he lives in California, the comment itself is not evidence suggesting that Texas residents were targeted by his solicitation of support for a lawsuit.

strating Wilkerson's minimum contacts with the forum.

\* \* \*

The evidence attached to Wilkerson's special appearance negated all grounds for personal jurisdiction alleged by RSL. That evidence showed that Wilkerson's online postings, which were made available to anyone interested in them, were not specifically directed towards Texas, and therefore do not support exercising jurisdiction over this case.[16] The burden then shifted to RSL to present evidence that personal jurisdiction properly could be exercised over Wilkerson. *See Kelly,* 301 S.W.3d at 659. As explained above, none of the evidence produced by RSL was factually sufficient to satisfy its burden. On the record before us we have no basis to conclude that RSL's evidence of the websites' content is evidence of what Wilkerson saw when he posted his comments. Given that there is no evidence that Wilkerson exercised control over or intended what was included on Yahoo! and Yelp other than his comments, there is no factual basis upon which the inclusion of localized content could be imputed to him. Accordingly, considering the overall quality and nature of Wilkerson's contacts as demonstrated by the evidence presented, we conclude the trial court erred in denying Wilkerson's special appearance.

## Conclusion

We reverse the judgment of the trial court and render a judgment of dismissal without prejudice for lack of personal jurisdiction.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

This case of first impression is important to the jurisprudence of Texas. It addresses the question of whether a non-Texas resident who uses interactive local websites allegedly to defame a Texas resident is subject to the same jurisdictional standards as a non-Texas resident who uses local print media allegedly to defame a resident.

Appellee, RSL Funding, L.L.C. ("RSL"), a Houston, Texas company, sued appellant Jerry Wilkerson, a non-Texas resident, for defamation, libel, and business disparagement for posting allegedly defamatory comments on local Houston Yahoo! and local Houston Yelp websites. In this interlocutory appeal, Wilkerson appeals the trial court's order denying his special appearance. In dismissing this case for lack of jurisdiction over Wilkerson, the majority converts the requested review of whether the evidence is legally sufficient to enable Wilkerson to avoid the reach of Texas' long-arm statute into an objection of its own to the competency of

16.  *See, e.g., Machulsky v. Hall,* 210 F.Supp.2d 531, 542 (D.N.J.2002) (buyer's negative eBay feedback about seller was not purposefully directed toward seller's home state of New Jersey); *Bailey v. Turbine Design, Inc.,* 86 F.Supp.2d 790, 796 (W.D.Tenn.2000) (holding defamatory statements posted on defendant's website attacked plaintiff as a nationwide competitor in aircraft conversions, not as a Tennessee businessman); *English Sports Betting, Inc. v. Tostigan,* No. CIV.A. 01–2202, 2002 WL 461592, at \*3 (E.D.Pa. Mar. 15, 2002) (stating that "[t]here is a difference between tortious conduct targeted at a forum resident and tortious conduct expressly aimed at the forum," and holding that defamatory statements published online did not target Pennsylvania, the forum state); *Archer & White, Inc. v. Tishler,* No. CIV.A.3:03–CV–0742–D, 2003 WL 22456806, at \*3 (N.D.Tex. Oct. 23, 2003) (allegedly defamatory statement on third-party website about seller of dentist's drills was not directed at Texas, where Texas-based seller made most of its sales).

RSL's evidence to establish the jurisdictional fact that Wilkerson used www.local.yahoo.com to publish his comments—a matter not presented to the trial court and not in dispute. In doing so, the majority not only erroneously raises the competency of the evidence to support the trial court's implied findings *sua sponte* on appeal, but also erroneously shifts the burden of proof from Wilkerson, to negate the jurisdiction of the Texas courts over him, to RSL, to prove it. Finding the jurisdictional evidence incompetent to support the fact that Wilkerson used www.local.yahoo.com, pursuant to its *sua sponte* review, the majority erroneously goes on expressly to decline to apply the legal test for the determination of jurisdiction over users of interactive websites—which it acknowledges both local.yahoo.com and yelp.com are—on the ground that Wilkerson did not own and operate the websites on which he posted his comments. By this means, it reaches the erroneous legal conclusion that the case must be dismissed for insufficient evidence of the court's jurisdiction over Wilkerson and dismisses the case. The majority thus derails an important case of first impression in a developing area of law in which internet website owners, search engine operators, and users are all in need of the legal guidance expressly sought by the parties here as a matter of law, not fact.

I respectfully dissent. I would hold that this Court is called upon to review and apply the law governing personal jurisdiction over the users of interactive websites, not to review the evidence as to whether Wilkerson used local Yahoo! or as to whether the site is interactive. Applying the legal test for determining jurisdiction over the users of interactive websites, I would hold that by using the interactive local Yahoo! website for Houston and the interactive Yelp website for Houston to post allegedly defamatory comments about a local Houston, Texas business, appellant subjected himself to the long-arm jurisdiction of Texas.

### Background

Wilkerson is a California resident. RSL is a Texas company that specializes in factoring structured settlement payments. Wilkerson's daughter, Trisha Marlene Wilkerson ("Trisha"), also a California resident, won the California State Lottery. Trisha and RSL entered into an agreement by which Trisha assigned a portion of her future lottery payments to RSL in exchange for a lump sum payment from RSL that she intended to use to purchase a home. Wilkerson apparently aided Trisha in conducting this business with RSL. As Trisha completed her business transaction with RSL, Wilkerson, who was unhappy with RSL's interaction with Trisha, posted comments regarding RSL on two different websites specific to Houston, Texas—local.yahoo.com for Houston and yelp.com for Houston.[1]

1. The majority claims:
    RSL produced no evidence to support its allegation that Wilkerson used "www.local.yahoo.com" to publish his comments in some fashion specifically associated with Houston. There is only evidence that RSL printed out a Yahoo! webpage that included a "local" reference in its web address (i.e. its uniform resource locator, or URL). The evidence that Wilkerson's comment was associated with Houston-related content on Yahoo!

    is not evidence that Wilkerson was responsible for that association, particularly if RSL or its Houston-based attorneys prepared the evidence of what appears on Yahoo! from their Houston-located computers.
    Op. at 677–78. Wilkerson made no objection to the form of RSL's evidence of jurisdictional facts below, and he does not argue that the evidence of jurisdictional facts is defective on appeal. The majority makes this argument and issues its ruling *sua*

On the local Houston Yahoo website, Wilkerson stated, *inter alia*, that "dealing with all of the lies by Jim Kelly [one of RSL's Houston employees] and the non returned promised phone calls by Jim and Mr. Sanchez from accounting" had been "by far the worst experience I have had in my 64 years of life"; that "RSL has lied repeatedly to us and misled us and have caused numerous delays in this project that still has yet to be funded"; that "[b]ecause of all the problems with [RSL] and their violating the contract, we are in the process of a law suit against them and if there is anyone else out there who have had similar experiences with [RSL], please join us in a class action law suit"; and, "Try calling any of their offices, N.Y., L.A., Atlanta etc and you will find that there are no offices there, only phone numbers that are transferred to the Houston Office. Very clever and manipulating of them. Just goes to show how they really conduct business, smoke and mirrors."

In his second Houston local.yahoo.com comment, Wilkerson stated, "Received our check today and now we are able to find out why RSL was so arrogant and mean and delaying everything. They did not have the money. The check is no good

NSF', non sufficient funds. Guess their word is as good as their check." The local Houston Yahoo! page on which Wilkerson made his comments contained a map and photograph of RSL's Houston office.

On Yelp's Houston website, Wilkerson wrote, "Received the check today from RSL and guess what, it appears their word is as good as their check[.] NSF NON SUFFICIENT FUNDS. I can see why they treated us so badly and were so rude and inconsiderate and kept delaying, because they don't have the money. What a joke they are." This webpage, too, contained both a map and photograph of RSL's Houston office.

RSL filed this suit against both Trisha and Wilkerson on November 25, 2009, alleging defamation, libel, and business disparagement. Trisha and Wilkerson both filed special appearances supported by their affidavits. The evidence established that Trisha was not involved in any way with the allegedly defamatory and libelous statements posted by Wilkerson. Her special appearance was granted, and Wilkerson's was denied.

Wilkerson's affidavit declared that he is a resident of California, does not own any real or personal property in Texas, has

*sponte* and, in doing so, it misapplies the law. The burden of proof in a special appearance is on the *non-resident* to prove the *absence* of jurisdiction; it is not on the resident plaintiff to prove the existence of facts sufficient to subject the non-resident to the jurisdiction of the Texas courts. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996) ("In Texas, a nonresident must negate all bases of personal jurisdiction to prevail in a special appearance."); *Gonzalez v. AAG Las Vegas, L.L.C.*, 317 S.W.3d 278, 282 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) ("[A] nonresident defendant who files a special appearance assumes the burden of negating all bases of personal jurisdiction that the plaintiff has alleged."). Moreover, even if the burden had been on RSL to prove jurisdictional

facts sufficient to establish jurisdiction over Wilkerson, as the majority implicitly holds, rather than on Wilkerson to negate the factual basis of RSL's allegations, parties having an objection to the form of the evidence are required not only to make their objection in the trial court but to secure a ruling on the objection by that court, or the objection is waived. *See, e.g., Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 650 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (discussing summary judgment evidence). Here, Wilkerson did not object to the form of RSL's evidence, nor did he attempt to negate the court's jurisdiction over him by proving that he did not use www.local.yahoo.com to publish his comments.

never owned any business in Texas, has never specifically directed any opinion or statement of fact concerning RSL to anyone in Texas, and has only traveled through Texas on one occasion. Wilkerson also averred that he found the websites to which he posted his comments by performing a Google search and did not "direct, or target, Houston, or Texas in general when I posted my review concerning RSL." He further stated that he does "not know how to target a specific location when posting reviews on the internet" and "did not attach a map or a photograph of RSL's location or building when [he] posted [his] review of RSL on the internet," nor does he know how to include such attachments.

RSL responded to Wilkerson's special appearance by arguing that Wilkerson purposefully directed his actions at Texas. RSL supported its response with the affidavit of Stewart A. Feldman, the Chief Executive Officer of RSL, who averred that Houston is RSL's principal place of business. Feldman stated,

> The Yelp Web site is an interactive site that offers interactive forums where users can post comments and communications regarding various businesses. The Yelp Web site has influence and a large audience in RSL's financial services industry, so that defamatory posts made on the Yelp Web site are particularly likely to cause injury to the reputation of RSL.

Feldman also averred that both local.yahoo.com and yelp.com "use geographic location as the key to their respective search options" and are "intended to help a searcher find information in specific geographic areas." Feldman stated that "[m]ore likely than not it will be residents of the Houston area in particular, or Texas residents in general, that will search RSL Funding located in Houston, Texas." RSL also provided evidence that the check it gave to Trisha was in fact a good check and that Trisha was able to use the funds from the check to purchase her home.

## Personal Jurisdiction

In his sole issue, Wilkerson argues that the trial court erred in denying his special appearance.

Here, the question is whether Wilkerson's acts of posting allegedly defamatory and libelous statements on interactive websites that provide communications about local Houston businesses are, by themselves, sufficient to support the exercise of personal jurisdiction over him.

In the context of establishing a Texas court's jurisdiction over a company doing business in Texas, courts have characterized internet usage as falling within three categories on a sliding scale. *See, e.g., Choice Auto Brokers, Inc. v. Dawson,* 274 S.W.3d 172, 177–78 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *Michel v. Rocket Eng'g Corp.,* 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.). At one end of the sliding scale are websites that are "clearly used for transacting business over the Internet," such as entering into contracts and the knowing and repeated transmission of files of information. *Dawson,* 274 S.W.3d at 177. These websites may be sufficient to establish minimum contacts with a state. *Id.* On the other end of the scale are "passive" or "informational" websites that are used only for purposes such as advertising and "are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state." *Id.* at 177–78. Between the extremes of the scale are "interactive" websites that allow for the "exchange of information between a potential customer and a host computer." *Id.* Courts determine jurisdiction in situations involving an interactive website by examining the degree of interaction between the

parties. *Id.; see also Karstetter v. Voss,* 184 S.W.3d 396, 405 (Tex.App.-Dallas 2006, no pet.) (characterizing eBay as interactive website and concluding that court had "to look beyond the internet activity to the degree of interaction between the parties.").

The two websites used by Wilkerson were clearly interactive—they allowed for the "exchange of information between a potential customer and a host computer." *See Dawson,* 274 S.W.3d at 178; *Karstetter,* 184 S.W.3d at 405. Therefore, the degree of interaction between the parties must be examined to determine jurisdiction. *See Dawson,* 274 S.W.3d at 178.[2]

Here, the contact in question is an individual's direct use of the internet to commit, allegedly, the torts of libel, defamation, and business disparagement. Thus, as we determine the "degree of interaction" between the parties in this case, we also look to other libel and defamation cases that involved the distribution of tortious statements to broad audiences to determine whether Wilkerson's contact with Texas via the internet is sufficient to satisfy the minimum-contacts requirement. *See Revell v. Lidov,* 317 F.3d 467, 471–72 (5th Cir.2002) (holding that sliding scale used to evaluate internet contacts is still applicable in defamation case, in spite of defamation cause of action's "unique features," concluding that sliding scale is compatible "with the 'effects' test of *Calder v. Jones* [, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),] for intentional torts,"

and stating, "we must evaluate the extent of [the interactivity between parties on internet "bulletin board"] as well as [appellant's] arguments with respect to *Calder* "); *see generally Touradji v. Beach Capital P'ship, L.P.,* 316 S.W.3d 15, 24–25 (Tex.App.-Houston [1st Dist.] 2010, no pet.) ("We focus our analysis on the relationship among the nonresident, the forum, and the litigation to determine if the alleged liability arises from or is related to an activity conducted in Texas.").

The tort of libel is generally held to occur wherever the offending material is circulated. *Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.,* 237 S.W.3d 762, 774 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984)). In *Calder,* an entertainer who lived and worked in California brought suit in California alleging that she had been libeled by Florida residents in an article printed in the *National Enquirer.* 465 U.S. at 784–85, 104 S.Ct. at 1484–85. The Supreme Court held that the California court had personal jurisdiction over the Florida defendants because

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in

---

**2.** Notably, in refusing to apply the sliding scale for interactive websites in this case, the majority fails to identify any prior Texas cases addressing interactive websites that have similarly refused to use the sliding scale for such cases; rather, it cites several Texas and one Fifth Circuit Court of Appeals case that do use it. In support of its refusal to apply this standard, the majority references, in its footnote 6, only unpublished cases of no precedential value (and one published case) from

other jurisdictions. These cases present neither binding nor persuasive authority and are also inapplicable in that they reference different factual scenarios. Likewise, the mostly unpublished cases from other jurisdictions cited in the majority's footnote 16 as failing to find that online defamatory statements were directed at the forum state are neither binding nor persuasive authority, present different fact patterns, and are inapplicable.

terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788–89, 104 S.Ct. at 1486. However, "[t]he Texas Supreme Court has warned that, in applying *Calder,* we should be mindful of shifting our focus from 'the relationship among the *defendant,* the forum and the litigation' to the relationship among the '*plaintiff,* the forum ... and the litigation.'" *Tabor, Chhabra & Gibbs,* 237 S.W.3d at 775 (quoting *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005)).

This Court has applied the law set out by the Supreme Court in *Calder* and *Keeton* to find that a Texas court could properly exercise personal jurisdiction over a non-resident defendant in a defamation case for the distribution of allegedly defamatory printed material in Texas and elsewhere. *Paul Gillrie Inst., Inc. v. Universal Computer Consulting, Ltd.,* 183 S.W.3d 755, 761 (Tex.App.-Houston [1st Dist.] 2005, no pet.). In that case, the Paul Gillrie Institute allegedly defamed a corporation with its headquarters and principal place of business in Texas and mailed the trade publication containing the article to subscribers across the country, including approximately fifty subscribers in Texas, some of whom were customers of the corporation. *Id.* at 760–61.

I would hold that this case is similar to *Calder* and this Court's prior case in *Gillrie* in that the non-resident defendant's conduct was purposefully directed at Texas. Specifically, Wilkerson's posting of allegedly defamatory statements regarding a Houston business on local websites that review Houston, Texas businesses was purposely directed at visitors to those targeted local websites, including consumers seeking information regarding the provision of financial services by Houston businesses. Wilkerson's posts referred to a Texas company, specifically named two of its Texas employees and its accounting department, made factual statements about its provision of financial services that RSL contends were false and defamatory, and solicited participants in a class action lawsuit against the company. Wilkerson made his comments on websites that included a map and photograph of RSL's Houston offices and that would be of particular interest to Texas residents investigating local firms that provide financial services, like RSL. Wilkerson complained of RSL's acts undertaken in Texas, and— as the allegedly defamatory posts indicate—Wilkerson was aware that RSL is a resident of and has its principal place of business in Texas, where any harm was suffered. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002) (holding that foreseeability of causing injury in Texas, though not determinative, is important consideration in establishing minimum contacts).

I would hold that Wilkerson's "interaction" with Texas by posting his allegedly defamatory and libelous statements online on local.yahoo.com's Houston website and yelp.com's Houston website is sufficient to support the trial court's exercise of personal jurisdiction over him. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 577 (Tex.2007) (holding that sufficient minimum contacts exist when non-resident defendant "purposefully directed action toward Texas"); *Tempest Broad. Corp. v. Imlay,* 150 S.W.3d 861, 875 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that single, substantial act can support exercise of personal jurisdiction).

Wilkerson argues that he did not purposefully avail himself of the benefits of "doing business" in Texas. He states in

his affidavit that he did not intentionally direct his actions to Texas, because he only performed a Google search and posted a review of RSL on the websites the search returned, and he did not attach the maps or photographs to his posts and did not know how to do so. However, this evidence does not overwhelm the other evidence in the record already discussed.

Wilkerson also argues that *Revell* and *Pearl v. Abshire* support his claim that the trial court cannot properly exercise personal jurisdiction over him. I would hold that this case is distinguishable from both cases. In *Revell,* the Fifth Circuit held that the Texas court could not exercise personal jurisdiction based on an allegedly defamatory article posted to an internet bulletin board because

> the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell [the resident plaintiff], and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder,* in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.

*Revell,* 317 F.3d at 473 (citing *Calder,* 465 U.S. at 788, 104 S.Ct. at 1482). As already discussed, Wilkerson's posts were made on websites that distribute reviews of local Houston businesses, specifically referred to RSL's Houston office and to specific employees in the Houston office, made factual statements that complained of RSL's Texas activities as a provider of financial services, and were directed to a medium that would be more likely to reach Texas readers than readers in other states, specifically including actual and potential customers of RSL and of other financial services providers in the Houston area. Furthermore, Texas was the focal point of Wilkerson's posts and of any harm suffered.

In *Pearl v. Abshire,* the Fort Worth Court of Appeals held, in a memorandum opinion, that the Texas court did not have personal jurisdiction over Pearl, the non-resident defendant, based on his posting of messages on the Yahoo! Finance AXA internet message board. No. 02–08–286–CV, 2009 WL 1996288, at *1, *4 (Tex.App.-Fort Worth July 9, 2009, no pet.) (mem. op.). The Fort Worth court concluded that

> Pearl's internet connections with Texas were in fortuitous response to the postings of a Texas resident, Abshire. By his own admission, Abshire [the resident plaintiff] purposefully posted messages in an attempt to prompt Message Board readers like Pearl [the non-resident defendant] to respond, and he acknowledged that his posts had, from time to time, provoked vitriolic responses. There is no evidence that Pearl ever posted any message about Abshire, except in response to, and shortly following, an initiating post by Abshire. Although some statements reference Texas, there is no evidence that Pearl directed his statements at Texas other than the fact that Abshire happened to be located in Texas at the time Pearl's messages were posted.

*Id.* at *4. Here, however, Wilkerson deliberately sought a forum in which he could post his statements regarding RSL by performing a Google search, and he posted them in a way that focused on a Texas business, the actions of a Texas resident that were undertaken in Texas, and the consumers of Texas financial services. Thus, *Pearl* does not apply in the instant case.[3]

I would overrule Wilkerson's sole issue.

---

**3.** Wilkerson did not argue that exercise of

personal jurisdiction would not be fair and

## Conclusion

I would conclude that the trial court correctly determined that it could exercise personal jurisdiction over Wilkerson, and I would affirm the judgment of the trial court.

just; therefore, it is not necessary to address this issue. *See Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 450 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding that defendant bears burden of presenting "compelling case" that exercising jurisdiction over it would not be fair and just); *see also Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex.1991) (holding that when non-resident defendant has purposefully established minimum contacts, Texas court's exercise of personal jurisdiction will not comport with fair play and substantial justice "only in rare cases").